## MONTGOMERY AND WIFE vs. JOHNSON, et al.

1. *Certainty in the Description of Lands.*

   Where an order of the Probate Court, directing the sale of the land of a decedent's estate, omits to describe the land, but refers to the petition, in which the quantity, interest and title of the decedent, and the former ownership of the land, with the fact that it was the only land owned by the him, were set out; held, that the order identified the land with sufficient certainty.

2. SAME: *When error will not vitiate.*

   In the report of an administrator's sale one parcel of the land was described as the " N. frl. ¼ of the N. W. ¼," etc., held that it was a clerical error, the N. frl. ½ was intended. An erroneous description of land, by numbers,will not control other descriptive particulars which indicate the land with certainty. (For further application of the rule see the opinion.)

3. PROBATE COURT: *Proceedings in for sale of real estate, etc.*

   The proceedings prescribed in sec. 168 Gantt's Digest, for the sale of real estate of deceased persons, applies to sales for the payment of purchase money, as well as for the payment of debts generally.

4. ——; *Proceedings in, how far conclusive.*

The proceedings of the Probate Court, when acting within its jurisdiction, are conclusive on all persons, until reversed or set aside by a direct proceeding for that purpose, however erroneous they may be.. The sale of real estate, under an order of the court without notice, and otherwise irregular and grossly defective, is not a nullity, and will, upon its confirmation, divest the title of the heirs.

APPEAL from *Monroe* Circuit Court in Chancery.

Hon. W. H. H. CLAYTON, Circuit Judge.

*B. D. Turner,* for appellants,

*S. P. Hughes,* for appellee.

HARRISON, J.:

This was a suit in equity in the Monroe Circuit Court, by the appellants, James W. Montgomery and Ophelia, his wife, against the appellees, John W. Johnson in his own right, and as admistrator with the will annexed of John Johnson deceased, Elijah C. Adams, Elisha P. Adams and Fanny Adams.

The complainants state that Joseph West, the father of the said Ophelia, and John T. West, his brother, purchased on the 20th day of November, 1849, from Robert Smalley, certain tracts or parcels of land in Monroe County, described therein as follows: " Part of the original claim of Moses Price, beginning at a post corner, from which a white oak, twenty inches in diameter, bears South, 63 degrees East, 28 links distant; and an oak, thirty-six inches in diameter, bears 62 degrees West, 32 links distant; thence North, 40 degrees West, 20 chains; thence South, 50 degrees West, 40 chains; thence South, 40 degrees East, 20 chains, to a post corner of the old survey; thence 50 degrees East, 40 chains to the beginning; containing 80 acres; and the N. W. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ and the N. frl. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of Section 23, in Township 3, South of Range 1 West, 102,62 acres, altogether 182.62 acres; for which they agreed to pay $800, in three equal installments, and gave him their three

promissory notes for $266.66, payable respectively on the 1st of January, 1851, 1852 and 1853; and he executed to them a bond to make them a deed, upon the payment of the notes.

That they entered into possession, and made valuable improvements upon the land, and paid the first note when it fell due.

That Joseph West died intestate on the 1st day of February, 1851, leaving the said Ophelia his heir at law, and John A. Harvick was appointed adminstrator of his estate.

That in a short time after the death of Joseph West, and about said month of February, 1851, John T. West sold the land, as well as the undivided half of Joseph West, to which he obligated himself to secure him a title as his own, to John Johnson, and gave him possession, and that after he sold to Johnson, he and Harvick paid Smalley the other two notes, and Smalley, at their instance, on the 7th day of September, 1852, conveyed the land to Johnson.

That Johnson remained in the exclusive possession of the land, and the sole enjoyment of the rents and profits thereof until his death, in the year 1857; and by his will devised the same to his widow, Nancy North Johnson, during her life, and after her death, to his son, the said John W. Johnson, and his daughter Ann Maria Johnson. That his will was duly probated, and administration, with the will annexed, upon his estate, granted to his widow and said John W. Johnson, and that Nancy North Johnson and Ann Maria Johnson both died soon thereafter, and John W. Johnson was the sole heir at law, of said Ann Maria Johnson.

That the plaintiffs inter-married on the 28th day of February, 1857, and on the 20th day of February, 1861, they filed their bill in equity in that court, against the said John W. Johnson, to recover the said Ophelia's undivided half of the land, and the rents and profits thereof, in which suit the defendant was served with process, and the same was continued from term to

term until the —— day of May, 1871, within one year before the commencement of this suit, when it was dismissed by the court, but without prejudice, for want of prosecution.

That John W. Johnson, on the 10th of January, 1867, sold and conveyed the land to his co-defendants, who had ever since been in possession; that he had, by the will of his father, an estate equal in value to the rents and profits of the plaintiff's half of the land, which accrued during his father's possession.

And that the time of her father's death, the said Ophelia was an infant, and continued to be such until after the commencement of the former suit.

The prayer of the complaint was for a decree for one-half of the land, and for the rents and profits.

John W. Johnson, only, answered the complaint, or made defense. He admitted all the allegations of it, except that when John T. West sold Johnson his own, he also sold him Joseph West's half of the land, and obligated himself to secure him the title that he desired.

The Court of Probate, he averred, at the April term, 1851, upon the petition of Joseph West's administrator, verified by his affidavit, showing the debts of the estate that had come to his knowledge; the amount of the assets in his hands; and that after paying the other debts, there would not be sufficient to pay for the land, made an order for the sale of his intestate's interest therein to pay the remaining two notes given in the purchase thereof, and that in pursuance of the order, having given the notice required by law, he, on the 15th day of July, 1851, sold the same at the court house door, at public auction, on a credit until the 1st day of January, 1852, and it was purchased by John T. West for $550; and at the next term he made a report of the sale to the court, which was in all things approved and confirmed; and that John T. West, afterwards, sold that half also to his

father, and instead of taking the administrator's deed to himself, had it made directly to his father; and, upon the payment of the notes given in the original purchase, he and the administrator had Smalley to convey to him the legal title to the whole.

A copy of the proceedings in the Court of Probate, was made and exhibited with the answer. The petition for the sale referred to, after stating that the estate had "an incomplete title to a certain body of land," describes it as "a tract containing 182.62 acres, in three parts, described more fully in Exhibit A, situate and lying in Montgomery Township, in said County of Monroe, in which said incomplete title said decedent owned and possessed at the time of his death, one undivided half, John West being tenant in common with him therein, and owning the other undivided half," and after showing the other debts that had come to his knowledge, proceeds thus: "Besides the indebtedness already specified, there is a fifth item going to complete the sum first above mentioned, consisting of a liability for the half in each of two notes executed to Robert Smalley, Esq., for the purchase money to be paid for said tract of land, each note being for $266.66, one due the 1st of January, 1852, and the other January, 1853; that it was in this way that incomplete title to said land was obtained, together with a bond for title executed to the said decedent and the said John West by the said Robert Smalley, a copy of which recorded in Record Book D, is herewith exhibited and made a part of this petition, marked Exhibit A, p. 125," and it further states that the estate owned no other lands.

If such an exhibit as that referred to accompanied the petition, it does appear in the record, and it seems likely that the recorded copy only was intended to be referred to. A copy of the bond was, however, filed as an exhibit with the complaint, and contains the same description of the land as is contained in the complaint.

The order of the sale is as follows:

"Be it remembered that on this day comes John A. Harvick, administrator of the estate of Joseph West deceased, by attorney, and presents his petition to the court accompanied by his own affidavit, and that of John T. West, shewing that there is belonging to said estate an incomplete title to the undivided half of a certain tract or parcel of land described in said petition, praying that the same may be sold for the benefit of creditors, and the court having considered of the matter, orders the same to be sold at public auction, giving notice according to law, and taking bonds for the purchase money with approved security, payable not more than twelve months after date."

In the report of the sale, which refers to the order as authority therefor, the land is described as "the undivided half of the N. E. $\frac{1}{4}$ of the N. E. $\frac{1}{4}$ of Section 23. Half the grant of M. Price; and the N. frl. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of Section 23; all in Township No. 3, S. of Range No. 1, West of the fifth principal meridian line, containing in all 182.62 acres."

And the following is the order confirming the sale:

"On this day the report of John A. Harvick, administrator of the estate of Joseph West, was presented to the court, of his proceedings of the sale of lands mentioned and set forth in said report, which was carefully examined and approved by the court."

Upon the hearing, the complaint was dismissed for the want of equity, and the plaintiffs appealed.

The appellants contend that as there is in the order for the sale no description of the land, it does not appear that it related to or directed the sale of that in controversy. This objection might prevail if there was nothing in the record or proceedings of the Court of Probate to designate the land, but it is a maxim of law, that that is sufficiently certain which can be made certain, and we find evidence of the most conclusive character in

the proceedings of the court, that it was the land which is the subject of this suit, that it directed and ordered to be sold.

The order directs the sale of the land described in the petition therefor, and the description there given is the same as that given in the complaint, and in the bond for title, as to quantity, interest, title, co-tenancy, and former ownership, and in respect to its purchase and the notes given for it, and which the petition also states was the only land belonging to the estate.

But, though the order was sufficiently certain, and did direct the sale of the land, it is still contended, that there was no sale; the report of the administrator, it is claimed, showing the sale of a different tract.

There is no such designation in the public surveys as the *North quarter* of any part of a section, and this particular in the description of the first mentioned parcel of the tract, is evidently a clerical error; and as the other part of the description agrees fully with that directed to be sold, it is manifest that the N. frl. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of Section 23, was intended. As to the second parcel, there is no description. The estate owned a part of the grant of Moses Price, and the same formed a part of the tract of 182.62 acres, which the court ordered the administrator to sell; and it cannot be supposed he sold another part of the grant not a part of the tract, or in which the estate had no interest.

The misdescription of the remaining part of the tract is, probably, also a clerical error, by the mistake, or inadvertent change, of a single letter, but whether so or not, it cannot control the other descriptive particulars and circumstances which indicate, and show with certainty, the land sold.

It is a well established rule in the construction of grants, which has an appropriate application in this case, that if there are certain particulars, once sufficiently ascertained, which designate the *corpus* or thing intended to be granted, the addition

of a circumstance, false or mistaken, will not defeat the description and frustrate the grant: *Præsentia corporis tollit errorem nominis; et veritas nominis tollit errorem demonstrationis.* *Jackson* v. *Clark*, 9 John, 218; *Glenn* v. *Maloney*, 4 Iowa, 314; *Worthington* v. *Hyler*, 4 Mass., 205; *Connolly* v. *Vernon*, 5 East., 51; *Mayo* v. *Blount*, 1 Fred., 283; *Beek* v. *Love*, 65, 3 Wash., Real Prop., 344.

We are therefore of the opinion that the sale of the land is shown by the administrator's report.

That the court committed gross errors, and the sale was attended with much irregularity, is manifest.

It is provided by section 186, Gantt's Digest, that "if any testator be the owner of lands and tenements at the time of his death, of which no provision is made by will, or if any person being the owner of lands and tenements, die intestate, and such testator or intestate shall not have sufficient personal estate to pay his debts, it shall be the duty of the executor, or administrator to apply to the court by petition, describing said land, and containing a true and just account of all the debts of the testator or intestate which shall have come to his knowledge, and the amount of the assets in his hands to pay such claims, for an order to sell the same, or so much thereof as shall be sufficient to pay them.

Section 170, requires the petition to be accompanied by the appraisement, and list of sales of the personal property, and the court is required in ordering the sale, to fix the time and place; to direct the executor, or administrator, to give the notice prescribed by the statute; and to specify in the order the length of credit to be given, and the kind of security to be taken; sections 171-172. But such order is not to be made unless notice of the intended application for the sale has been given, at least four weeks before, in some newspaper printed in the County where the lands lie, if there be any, and if none, by advertisements set

up in at least six of the most public places in the County. Section 176.

Section 182, provides for the sale of lands that the testator or intestate had purchased, but had not completely paid for; for the payment of the purchase money, in the case of an insufficiency of assets for that purpose, after the payment of the other debts.

None, or but few of these requirements, appear to have been complied with. Notice of the intended application, it is evident could not have been given, nor could a list of sales of the personal property have accompanied the petition, for the record shows that the application was made the next day after the grant of administration.

The Court of Probate seems to have conceived, that as the object of the sale was the payment specially of the purchase money of the land, it was not within, or to be governed by the provisions relating to sales authorized by section 168. The statute most clearly admits of no such construction. Both sections relate to the same subject; have the same object in view, and are part of the same system, which is intended to be consistent and harmonious, and must be construed together. 1 Kents Com., 513; *Rex* v. *Loxdale*, 1 Burr., 445.

The same necessity for such regulations exist in the one case as in the other, and if the provisions relate alone to sales under section 168, there are no regulations whatever, prescribed for those provided for by section 182, though a subject of the same nature and of like importance, either as to the manner of obtaining the order or of making the sale. Such a conclusion would be absurd. But although the Court of Probate committed many gross errors, and the proceedings throughout were very irregular, it does not follow, that the sale was a nullity.

The administration of the deceased persons, is committed to the jurisdiction of the Courts of Probate, and upon the grant of

Montgomery and Wife vs. Johnson et al.

letters testamentary, or of administration, the court acquires jurisdiction of the estate and proceeds *in rem.*

As a Superior Court, with general jurisdiction and plenary power over the matters committed to its peculiar cognizance, its judgment or order, when acting within the sphere of its jurisdiction, however erroneous it may be, is conclusive as to all persons, until reversed upon review by a higher tribunal, or set aside in a direct proceeding for that purpose; for it is well settled that the judicial sentence of a Superior Court of competent jurisdiction over the subject matter to which it relates, cannot be attacked or impeached in a collateral proceeding, upon the ground that the court erroneously exercised its powers. *Sturdy and Wife* v. *Jacoway,* 19 Ark., 499; *Borden* v. *State,* 6 Eng., 519; Marr. *ex parte,* 12 Ark., 84; *Rogers* v. *Wilson,* 13 Ark., 507; *Thorn and Wife* v. *Ingram,* 25 Ark., 52.

In the above case of *Rogers* v. *Wilson,* the sale was ordered, as in this, without notice of the intended application, having been given, and the court say: "Although it is clearly erroneous for the Court of Probate to grant an order for the sale of real estate without the notice of the intended application therefor required by the statute, having been given, the order is not void."

The sale upon its confirmation by the court became complete and absolute, and divested the heir of all right in the land, and the plaintiffs set up and show no equity against the legal title of the defendants in possession; the court below therefor did not err in dismissing their complaint.

The decree is affirmed.