SEAL et al. v. BANES et al.

No. 23033.  May 15, 1934.

Rehearing Denied Sept. 11, 1934.

John B. Harrison and Hall & Thompson, for plaintiff in error.

Carter Smith, for defendant in error.

Geo. S. Ramsey, Christy Russell, and John S. Robinson, amici curiae.

SWINDALL, J. Wilbert A. Banes died intestate in Kiowa county, Okla., August 14, 1921, married, and survived by his widow, Ruth Banes, and two minor children, Kenneth Lee Banes and Maxine Banes. At the time of his death he owned the real estate in Oklahoma county, Okla., involved in this action, which consists of certain platted lots outside of the corporate limits of Oklahoma City, Okla. Thereafter, and on January 17, 1922, the widow filed in the county court of Tulsa county, Okla., her verified petition for letters of administration upon the estate of the decedent. She was appointed administratrix of said estate and letters of administration were issued to her. Thereafter, and on September 28, 1922, acting upon purported authority granted her by said court, she sold the property hereafter mentioned to C. B. Montgomery, who in turn deeded it to A. W. Corley, who thereafter died testate devising the property to his widow, now Annie Corley Seal, who is the record owner at this time. Kenneth Lee Banes and Maxine Banes, minor children of the deceased, by Oscar Cobb, their guardian, commenced an action in the district court of Oklahoma county, Okla., on May 21, 1930, against Annie Corley Seal, C. W. Seal, her husband, F. E. Harper and Roy J. Turner, defendants, alleging the appointment and qualification of the administratrix, that she filed a petition to sell the real estate involved to pay debts; and further alleging that such special proceeding in the administration proceedings to sell the real estate, and the deed of the administratrix, was void as to them, for the reason that the record and proceedings showed upon the face thereof that said minors resided in Tulsa county, Okla., and were residing there at the time said administration proceedings were commenced, and at the time the petition was filed praying for an order to sell real estate, and the order to show cause was issued; and that said notice to show cause was not personally served on all persons interested in the estate, and that they did not have a general guardian at said time, and that notice was not personally served upon them, as required by

law; that they were adverse parties in said special proceeding, and that the sale as to their interest in said real estate was void; and claiming to own an undivided two-thirds interest in the property. The defendants all relied upon the validity of the administration proceedings and asserted their title based thereon. Upon issues being joined the cause was tried and judgment rendered on the pleadings in favor of the minors as to two-thirds of the property. The defendants appealed. The parties will be referred to herein as plaintiffs and defendants as they appeared in the trial court.

The plaintiffs contend that the administration proceedings upon the estate of the deceased father were void upon three grounds: (1) the decedent was a citizen and resident of Oklahoma county, Okla., at the time of his death and did not own or have any estate in Tulsa county, and, therefore, the county court of Tulsa county had no jurisdiction to administer upon his estate; (2) the real estate involved was the statutory family homestead at the time of the death of the decedent and was not subject to sale for the payment of debts of the decedent; and (3) that the minor plaintiffs, who were residing with their mother in Tulsa county, Okla., during the pendency of the administration proceedings, were not personally served with a copy of the order for hearing on the petition to sell and an opportunity given to show cause why an order should not be granted to the administratrix to sell real estate as required by section 1278, and, therefore, said minors were denied due process of law and that said pretended sale was in all things void.

The defendants contend: (1) That the action in Oklahoma county is a collateral attack upon the proceedings in the county court of Tulsa county, Okla.; (2) that the administrator's deed was recorded for more than three years prior to commencement of the action in Oklahoma county and is not subject to attack, and that the alleged guardian is barred by the statute of limitations from maintaining said action; (3) that the purported guardian herein, Oscar Cobb, both as guardian of the minors herein and as an individual, is estopped from maintaining this action; and (4) that the judgment of the district court of Oklahoma county is contrary to law and the evidentiary facts disclosed by the record. Defendants, also, upon the oral argument of this cause, contended that the minor heirs cannot inherit more than their father owned; that the property was incumbered by mortgage at the time

Wilbert A. Banes departed this life for more than the same was reasonably worth, and that the minors had no vested interest in the real estate.

Upon the trial of the cause in the district court of Oklahoma county each party moved the court for judgment on the pleadings. The motion for judgment on the pleadings is in the nature of a demurrer, which it closely resembles, and admits for its purposes the truth of all of the facts well pleaded by the opposite party. Ferrell v. Town of Mountain View, 127 Okla. 246, 260 P. 470; Inter-State Mortgage Trust Co. v. Duke Poor Buffalo, 127 Okla. 269, 260 P. 768; Cardin Building Co. v. Smith, 125 Okla. 300, 258 P. 910, Mires v. Hogan, 79 Okla. 233, 192 P. 811; State ex rel. v. Wilson, 124 Okla. 236, 254 P. 968. The defendants, therefore, by their motion for judgment on the pleadings admitted the truth of all facts well pleaded by the plaintiff, and the plaintiff admitted the truth of all facts well pleaded by the defendants. Under that state of the record there was only one issue left for the trial court to determine; namely, the sufficiency of the service of the notice to show cause why an order should not be made authorizing the administrator to sell said property, and the trial court determined the case upon that issue.

The order of the county court of Tulsa county authorizing the sale of the real estate involved in this action in so far as the same relates to that service is as follows:

"The court being advised in the premises, after hearing the evidence finds that the hearing of the petition to sell real estate was by order in this court duly made, set for hearing on this date and at this hour; that notice of said hearing has been duly made by mailing notices thereof to Maxine Banes and Kenneth L. Banes, residing at No. 1, North Gillette avenue, Tulsa, Okla., and to Dr. L. Banes, the father of Margaret Banes, the mother of deceased residing at Mounds, in Creek county, Okla., on the 7th day of March, 1922, and by publishing notices of said hearing in the Tulsa Daily Legal News, a newspaper published in said county, for two weeks prior to said hearing, the first of said publications having been made on the 9th day of March, 1922, and the last publication thereof on the 23rd day of March, 1922."

Section 1276, O. S. 1931 (1268, C. O. S. 1921), provides that to obtain an order for the sale of real estate the administrator must present a verified petition to the county court, or to the judge thereof, setting forth the reasons why it is necessary to sell a part or all of the real estate, and a general-

description of the real estate, except the homestead of which the decedent died seized or in which he has any interest, or in which the estate has acquired any interest, and the names of the legatees and devisees, if any, and the heirs of the decedent so far as known to the petitioner. Section 1277, O. S. 1931 (1269, C. O. S. 1921), provides that if it appears to the court or a judge thereof from such petition that it is necessary to sell the whole or some portion of the real estate for the purposes mentioned in the preceding section or any of them, such petition must be filed and an order thereon made directing the persons interested in the estate to appear before the court at a time and place specified not less than four nor more than ten weeks from the time of making such order to show cause why an order should not be granted to the executor or the administrator to sell so much of the real estate of the decedent as is necessary. Section 1278, O. S. 1931 (1270, C. O. S. 1921), provides how such persons must be served. It, in part, reads:

"The county judge shall cause copies of the order to show cause to be posted up in three public places in the county, one of which shall be at the courthouse where the hearing is to be held, and a copy personally served on all persons interested in the estate, any general guardian of a minor so interested, and any legatee or devisee or heir of the deceased, who are residents of the county, at least ten days before the time set for said hearing."

At the time said order was made no general guardian had been appointed for the minors. Later, Oscar Cobb, who is a surety on the administrator's bond of Ruth Banes, was duly appointed guardian for said minors and commenced this action in ejectment in the district court of Oklahoma county, Okla., where the land involved is located, and also prayed for a cancellation of the order of sale entered in the county court of Tulsa county in the administration proceedings and the administrator's deed executed pursuant to said order of sale recorded in Oklahoma county as a cloud upon their title. The title of defendants in that action depended upon the validity of the sale made by the administrator. The vital question for this court to determine is the validity of the sale made by the administratrix. We have set out the contentions of the respective parties above. The district court of Oklahoma county, Okla., sustained the contention of the general guardian and the minors that they resided in Tulsa county and never have been personally served with a copy of the

order to show cause why said real estate should not be sold, and said minors at that time did not have a general guardian appointed for them in said county, that the county court was without jurisdiction to make an order to sell said property, and that the proceedings relative to said sale were without notice to said minors and any general guardian for said minors, and that the action of the probate court of Tulsa county, Okla., in selling said property without complying with section 1278, O. S. 1931, supra, was in all things void, and deprived said minors of their property without due process of law; and entered an order reading, in part, as follows:

"The order of sale of the county court of Tulsa county, Okla., is void in so far as the interest of said minors were concerned and that all subsequent proceedings thereunder pursuant to said order of sale are void for the reason that no copy or other notice to show cause why an order should not be granted by the administratrix to sell real estate was personally served on any general guardian of said minors or on said minors, plaintiffs herein, within the county of Tulsa, state of Oklahoma, although said minors were then residents of Tulsa county, state of Oklahoma, and were then within Tulsa county, state of Oklahoma."

Section 10670, O. S. 1931, provides, in part, that:

"The county court has probate jurisdiction, and the judge thereof power, which must be exercised in the cases, and in the manner prescribed by statute; * * *

"Fifth. To order the sale of property of estates, or belonging to minors."

In ordering the real estate involved in this case sold without personal service of a copy of the order to show cause upon the minors, or a general guardian of the minors, did the county court of Tulsa county exercise its jurisdiction in the manner prescribed by statute?

The Supreme Court of this state, in Bernath v. Kolosky, 82 Okla. 190, 200 P. 147, held that service by mail is not personal service; and in Dalton v. St. Louis Ry. Co., 87 S. W. 610, the Missouri court says:

"The term 'personal service' has a fixed and definite meaning in law. It is service by delivering the writ, notice or order to the defendant personally, as contradistinguished from other modes of service, and hence does not include service by leaving a copy at the defendant's last known place of abode or by mailing a copy to him."

The expression "personal service of process," generally speaking, means the actual

delivery of process to the defendant in person. Holiness Church v. Metropolitan Church (Cal.) 107 P. 633. The term "personal service of process" has a fixed and definite meaning in law. It is service by delivery of the writ to the defendant in person. Thisler v. Little, 86 Kan. 787, 121 P. 1123; McKenzie v. Boynton, 19 N. D. 531, 125 N. W. 1059; Scanlon v. Scanlon, 154 Iowa, 748, 135 N. W. 634. In Ryan v. Kelly, 9 Mo. App. 396, the court held that:

"Personal notice must be given by a delivery thereof directly to the person to be notified."

And in the case of Skinner v. Sullivan, 184 N. Y. S. 159, the court held that:

"Where service of a notice is required, either by a statutory provision or by established judicial procedure, the service must be personal, unless a different mode of service is authorized."

And in the case of Town of O'Fallon v. M. & O. Ry. Co., 45 Ill. App. 572, the court held that:

"Where a statute points out and directs the way in which an act is to be performed, as the serving of a notice, it should be complied with, especially where the act is to be the basis of a suit to be brought."

How can the persons interested in the estate, and any general guardian of minors so interested, show cause why an order should not be granted to sell unless and until they have been served with a copy of the order to show cause?

The provisions of our Code relative to filing a petition to obtain an order of sale and service of a copy of order to show cause, are very similar to the provisions of the laws of California and several other states on the same subject, which will hereinafter be considered. In the case of Campbell v. Drais, 57 P. 994, the Supreme Court of California held that:

"Under Code Civ. Proc. sec. 1537, providing that, to obtain an order for sale of real estate to pay decedent's debts, petition must be made, and section 1538 that, if it appear to the court necessary to sell the real estate, an order must be made directed to persons interested to show cause why an order to sell should not be granted, and section 1539, providing that a copy of the order to show cause shall be served on persons interested, an order of sale is void; the court having obtained no jurisdiction of infants interested, in the absence of an order to show cause and service thereof on them."

In the case of Rodgers v. Nichols, 15 Okla. 579, 83 P. 923, the Supreme Court of Oklahoma was considering section 636, Wilson's Anno. Stat. 1903, in relation to divorce and alimony, wherein it is provided:

"When service by publication is proper a copy of the petition, with a copy of the publication notice attached thereto, shall, within three days after the first publication is made, be enclosed in an envelope addressed to the defendant at his or her place of residence, postage paid, and deposited in the nearest post office, unless the plaintiff shall make and file an affidavit that such residence is unknown to the plaintiff and cannot be ascertained by any means within the control of the plaintiff."

The court said:

"This provision of our statute requiring the plaintiff to mail to the defendant a copy of the petition, with a copy of the publication notice attached thereto, where the address of the defendant is known, is clear and mandatory in its terms. It is a condition precedent to the granting of a valid decree."

This court in that case said that our statute is identical with the statute of Kansas and approved the language of that court in the case of Lewis v. Lewis, 15 Kan. 193, Second Edition, 153, an opinion delivered by Mr. Justice Brewer, wherein it is said:

"Now, this is a part of the service. Without it no decree can properly be entered. It is a precaution ordered by the Legislature to guard against the danger of decreeing a divorce without the knowledge and presence of both parties. It may be very inadequate, but it is worth something. It is a step in the right direction. But, whether adequate or not, it is the legislative direction, and as such may not be disregarded.

"It may be said that, as in this case, the copy of the petition may fail to reach the defendant in time for the trial, and that then there is no other notice than by the publication, and section 77 should be held applicable. True, the mailed petition and notice may give no actual notice; neither may the publication. But each is an effort toward actual notice, and the two combined are requisite for legal service. Service by copy at the usual place of residence, is actual service. The copy may fail to reach the defendant; actual notice may not be received by him. But the service is complete, and a judgment rendered cannot be opened because rendered without notice. Service is not always equivalent to actual notice, and does not always result in actual knowledge. It is not the actual result of any particular step, which determines whether it is or is not a part of the service. It is enough that the Legislature has constituted it a part. And where the Legislature has not in terms declared it a part, if the obvious scope and

purpose of the step required is to secure notice of the pendency of the suit, it may fairly be considered a part of the service."

So, where the Legislature in clear and concise language has declared the steps to be taken to give notice of the pendency of the proceeding to sell the interest of a minor in real estate where such minor is an adversary party, such steps must be considered a part of the service.

In the case of Cordray v. Cordray, 19 Okla. 36, 91 P. 781, the Supreme Court of Oklahoma Territory, at page 41 of the opinion, referring to the case of Galpin v. Page, 18 Wall. (U. S.) 350, says:

"The court lays down the rule that a strict and literal compliance with the statutory provisions is necessary; that where the procedure is not according to the course of the common law, but under a special statutory provision and special powers thereby conferred, which are exercised in a special manner, such powers are exercised over a class not within its ordinary jurisdiction, and therefore no presumption of jurisdiction would attend the judgment of the court."

If, as this court has held, the provision of our statute requiring the plaintiff to mail the defendant a copy of the petition for divorce with a copy of the publication notice attached thereto, where the address of the defendant is known, is clear and mandatory in its terms, it appears to us that the statute is likewise clear and mandatory in its terms that a minor be served with a copy of the order to show cause before being deprived of his property.

In the case of Wyatt's Adm'r v. Rambo, 29 Ala. 510, the Supreme Court of that state in the fourth paragraph of the syllabus held that:

"Although the orphan's court, under the general powers conferred on it by the act of 1806 (Clay's Digest, 300, sec. 21) may have been a court of general jurisdiction; yet, as to its power to order a sale of the personal property of an estate, which it derived exclusively from the act of 1809 (Ib., 223, sec. 13) it must be considered a court of special, or limited jurisdiction, and its records, therefore, must affirmatively show the facts necessary to sustain its jurisdiction."

In the body of the opinion, at page 525 of 29 Ala., the court uses this language:

"It is contended that the orphan's court was made by this statute, enacted in pursuance to the express provisions of the Constitution, a court of general jurisdiction.

Without contesting that proposition, let us inquire what is its effect. If the court is made one of general jurisdiction over all matters pertaining to an orphan's court, it acquires by the comprehensive grant of power the same jurisdiction which pertained to similar courts in England, whence we derived the fundamental principles of our jurisprudence. As to the powers which it derives under this general grant of authority, it may be a court of general jurisdiction. ' But as to those powers which that court derives under special statutes, and which would not, in the absence of the statute, pertain to it as a court of probate, it must, in common with all other courts, be deemed a court of limited jurisdiction. Whenever, by statute, a new power is conferred even upon the circuit court, which undoubtedly is a court of general jurisdiction; and the mode of proceeding is prescribed by statute, it becomes, quoad hoc, a court of special, or limited jurisdiction."

In the case of Stadelman v. Miner, 155 P. 708, the Supreme Court of Oregon held that:

"A proceeding to subject the realty of a decedent to the payment of his debts is not a 'proceeding in rem,' and is not even a common-law proceeding, but is purely statutory."

The defendants rely principally upon the case of Grignon's Lessee v. Astor, 2 How. 319, 11 L. Ed. 283, which is fully discussed in many of the cases hereinafter cited. The Supreme Court of Orgeon, in Fiske et al. v. Kellogg et al., 3 Ore. 503, held that:

"Probate Sale—Infant Heir a Necessary Party—Held, that a sale of a decedent's real estate to pay debts by virtue of an order of the probate court, under the statute (1855), is void as to an infant heir not made a party to the proceeding, and for whom no guardian was appointed. Such proceedings are hostile to the heirs, who are necessary parties, and the probate court must have jurisdiction of the persons (as well as the subject-matter) in the manner provided for in the statute, or the sale will be void."

And, in discussing Grignon's Lessee v. Astor, supra, the court said:

"That case arose under a statute in Michigan, and by looking into it, it will be seen that its provisions differ very materially from those contained in our statute of 1855, under which the proceeding now under consideration was had. The first section of the Michigan statute provided 'that upon representation of the insufficiency of the goods of an intestate to pay his debts. the same being made to appear to the court. the said court was authorized to empower and license the administrator to make sale of all or part of the real estate of the intestate; and

the administrator, by virtue of such license, should by deed convey the same title as the deceased in his lifetime could have conveyed.' The court held that the language used in this section of the act vested in the court jurisdiction to make the order of sale, upon facts stated in the petition being made to appear. It further held that the mode of proof and giving notice prescribed by a subsequent section pertained to the exercise of jurisdiction after it was acquired, and was directory merely.

"We will now refer to a few sections of our statute of 1855, page 360.

"Sec. 9. 'If it shall appear by such petition that there is not sufficient personal estate in the hands of the executor or administrator * * * to pay the debts outstanding against the deceased, * * * and that it is necessary to sell the whole or some portion of the real estate for the payment of such debts, the probate judge shall therefore make an order directing all persons interested to appear before him at a certain place and time therein specified, to show cause why such an order should not be made.'

"It will be noticed by the provisions of this section when a petition is filed by the executor or administrator containing the facts necessary to give the court jurisdiction of the subject-matter, the probate judge is required to make an order directing all the parties interested to appear and show cause why an order to sell the real property should not be made; while the Michigan statute provides that when such a petition is filed, and the facts therein made to appear to the court, the court is authorized to empower and license the executor or administrator to sell so much of the land as may be necessary.

"Sec. 10. 'A copy of such order to show cause shall be personally served on all persons interested in the estate * * *' or shall be published at least four successive weeks, etc. This notice can be dispensed with by all persons interested in the estate signifying in writing their assent to the sale."

The territorial decision is styled Jackson v. Astor et al., reported in 1 Pin. (Wisconsin Reports) vol. 1, page 137. In the United States Supreme Court it is styled "The Lessee of Grignon et al. v. Astor et al., 2 How. 319, 11 L. Ed. 283.

The statute of New York, passed in 1813, contained provisions substantially the same as ours. The case of Schneider v. McFarland, 2 Comstock, 459, arose under that statute. The case of Grignon's Lessee v. Astor, supra, was cited in that case by appellants, and was thoroughly reviewed by the court in deciding that case. The syllabus paragraphs in the New York case are as follows:

1. "A sale of an intestate's real estate to pay debts by virtue of a surrogate's order, under the statute (1 R. L. 444, sec. 23, etc.) is void as to infant heirs for whom no guardian was appointed."

2. "The cases of Grignon v. Astor (2 How. 319) McPherson v. Cunliff (11 Serg. & Rawle, 429), and like cases in other states, referred to, and distinguished from the present case by the difference in the provisions of the statutes under which they arose."

3. "Proceedings for the sale of the real estate of a decedent to pay debts, it seems, are hostile to the heirs, and the surrogate must have jurisdiction of the persons (as well as of the subject-matter), in the manner provided for in the statute, or the sale will be void."

In the body of the opinion, page 461 of 2 N. Y., the court says:

"Thus, in McPherson v. Cunliff (11 Serg. & Rawle, 429), the property had been sold, on petition of the administrator, by order of the orphan's court, to pay debts, and to provide for the maintenance of minor children, of which the plaintiff, who sought to repudiate the sale, was one. It was held that under the peculiar and exclusive power of the orphan's court, as a court of record, established by the Constitution, an order of sale was in the nature of a proceeding in chancery, of which the petition of the administrator was the bill, and in which, by the act of the assembly, he is the sole party representing the estate. (Id. 433.)

"The doctrine and language of the court in this case was adopted by the learned judge who pronounced the opinion of the U. S. Court in Grignon's Lessee v. Astor (2 How. 319), in reference to proceedings under a statute of Michigan, the first section of which declared 'that upon representation of the insufficiency of the goods of an intestate to pay his debts—the same being made to appear to the court—the said court was authorized to empower and license the administrator to make a sale of all or a part of the real estate of the intestate; and that the administrator, by virtue of such license, should by deed convey the same title as the decedent in his lifetime could have conveyed."

"In the first case above cited, the application was in behalf of the infant; the administrator acting as guardian by statute. In the second, the unequivocal language of the first section of the act, vested in the court jurisdiction to make the order of sale, upon the facts stated in the representation being made to appear. The mode of proof and of giving notice, prescribed by a subsequent section, pertained to the exercise of jurisdiction, after it was acquired, and was held to to be directory merely. The distinction between the statutes referred to in these cases, and our own, is obvious. According to the

23d section of the law of 1813, the surrogate, by the presentation of the account, does not acquire jurisdiction to direct a sale, but only to make orders for the appearance of parties interested. These orders are in the nature of process; and to them his authority is limited. No amount of proof would justify an order of sale until the necessary measures, prescribed by law, were adopted to sesure the appearance of the infant heirs and devisees, and to bring in the other parties in interest. In a word, the act recognizes an interest in the infant heir or devisee in the land sought to be sold, and provides, in substance, that they shall not be deprived of it, without appearing and an opportunity of being heard by their guardian.

"The administrator is not, therefore, the sole representative of the real estate of the decedent, in these proceedings. He is the moving party in behalf of creditors. His object is by a special proceeding before a court of limited jurisdiction, to turn the real estate into personalty with a view to the payment of debts. **The heir has the right to contest his allegations, and show that no such necessity exists.** The right is a most important one; and one which the statute effectually secures to him. The 31st section declares that, in all cases, when a petition shall be presented by an administrator, etc., for the sale of real estate, and one or more of the heirs or devisees of such testator or intestate shall be infants, the surrogate shall appoint a substantial freeholder a guardian for the sole purpose of appearing for and taking care of the interest of such infants in the proceedings therein. The statute is imperative, and leaves nothing to the discretion of the surrogate. The proceeding gives a right to litigate, between parties, in a court of justice, and is therefore a suit. (2 Pet. 249.) It is one by which the infant heir may be deprived of his inheritance, and to which he is an adversary and necessary party, with a right by his guardian to represent and defend his own interest. It is, therefore, as essential that the surrogate should acquire jurisdiction of the person of the heir, to conclude his rights by an order of sale, as it is of the property which is the subject of it."

The Supreme Court of Kansas, in the case of Mickel v. Hicks, in an opinion delivered by Mr. Justice Brewer, later an Associate Justice of the Supreme Court of the United States, reported in 19 Kan. 578, in the first and second syllabus paragraphs, held:

1. "Proceedings for the sale by an administrator of the real estate of the decedent are not proceedings in rem, but are, so far as the heirs are concerned, adversary; and notice to them is jurisdictional."

2. "A general finding or recital in a judgment or order of a court of record, of due service of process, or notice, is limited by and restricted to the process or notice, if any there be, actually found in the record; and the validity of the judgment or order will depend on the sufficiency of such process or notice and the service thereof."

After briefly discussing the rule announced in Grignon's Lessee v. Astor, supra, and other cases, Judge Brewer said:

"We do not care to enter into any lengthy discussion of this question, which has been so fully discussed in the cases we have cited, as well as in many others. We shall content ourselves with expressing our adherence to the views of those courts which hold the proceeding adversary, so far as the heirs are concerned, and notice to them jurisdictional. Briefly, we may say that the title and the possession of real estate pass immediately to the heirs; that it is not sold as of course, but only when necessary to pay debts; that until that fact is judicially established, the heirs may not be divested of their title, and before one is divested of title to property he ought to have his day in court; that the appointment of an administrator does not bring the heir into court; that he must be brought in, if brought in at all, by special notice; that as the heir ought to have notice, the Legislature has required notice; and that a requirement so wise and just ought not to be weakened or annulled by judicial construction. Further, we may add, that the waste of estates in settlements is proverbial, and that provisions checking hasty sales, and requiring notice to parties interested, tend to diminish the waste, and their salutary effect ought not to be destroyed. * * *"

See, also, Graden v. Mais, 77 Kan. 702, 95 P. 412, and Casper v. Taylor (Kan.) 87 P. 1138.

In the case of French v. Hoyt, 6 N. H. 370, 25 Am. Dec. 464, that court held that:

1. "Administrator of intestate estate applying for leave to sell realty must give notice of such application, otherwise the sale under the license conveys no title."

2. "Such notice is necessary, notwithstanding the administratrix is the mother of the minor heirs for whom no guardian has been appointed, and notwithstanding the insolvency of the estate."

3. "The mother, as guardian by nature, or for nurture, has no control over the estate of the child, nor is she under any responsibility for the due care of it."

In the case of Clark v. Thompson, 47 Ill. 25, 95 Am. Dec. 457, the Supreme Court of Illinois, in the first, second and third syllabus paragraphs, held:

1. "Mode provided by statute must be

558

pursued, whereby court acquires jurisdiction over the persons of the minor heirs, in proceedings by an administrator to sell the real estate of his intestate; otherwise the court is without jurisdiction of the persons of such heirs, and, as against them, the proceedings are void. A guardian has no power, in such case, to admit service of the summons for the minor heirs."

2. "Presumption in favor of jurisdiction over person even of a court of general jurisdiction, may be rebutted in all collateral proceedings. And such presumption is rebutted when the record shows service which is insufficient, and there is no finding of the court from which it may be inferred that there was other service or appearance."

3. "Where court does not acquire jurisdiction of persons of minor heirs in mode provided by statute, in a proceeding to sell the real estate of a decedent by his administrator, such jurisdiction is not conferred by the appointment of a guardian ad litem, and his answer for the heirs; and, as to them, a decree in such case is a nullity, and may be attacked in a collateral proceeding."

In the case of Dorrance v. Raynsford et ux., 67 Conn. 1, 52 A. S. R. 266, the Supreme Court of Connecticut, in the first, second and third syllabus paragraphs held:

1. "By the law of this state, as well as by the common law, the real estate of a deceased person vests immediately upon his death in his heirs or devisees. It can be taken from them, only to satisfy some claim existing against the estate, or some condition arising in its settlement which makes the sale of the land necessary or advantageous, and then only in the manner provided by law."

2. "A court of probate, in ordering a sale of any of the real estate of a deceased person, is exercising a special statutory power, and not one that pertains to the ordinary settlement of the estate."

3. "It is essential to the validity of an order of a court of probate directing the sale of a deceased person, as well as to the validity of the deed of the administrator given pursuant thereto, that public notice of the application to sell should have been given to the parties adversely interested in the estate. The burden of proving these facts rests upon the party who sets up and relies upon the administrator's deed."

And, in the case of Townsend v. Tallant, 33 Cal. 45, 91 Am. Dec. 617, the fifth syllabus paragraph reads as follows:

5. "Administrator who is also guardian of infant heir and who, as administrator, attempts to divest the title of the heir by a sale of the decedent's land for the payment of debts, occupies quoad the petition a position hostile to the heir, and a guardian ad litem must be appointed."

See, also, Carter v. Frahm, 31 S. D. 379, 141 N. W. 370, and cases there cited and approved in that opinion.

In the case of Doe ex dem. Mitchell v. Bowen, 8 Ind. 197, 65 Am. Dec. 758, that court held:

"Administrator's sale ordered and confirmed without notice to heirs is void. The court acquired no jurisdiction to act in the premises."

In the case of Pearson v. Pearson, 46 Cal. 610, the Supreme Court of that state held, among other things, that:

"When the record recites the mode adopted to acquire jurisdiction over the person in a probate proceeding, it will not be presumed something different was done."

In the case of Fell v. Young, 63 Ill. 106, the first and second syllabus paragraphs read:

1. "Administrator's Sale—Authority Must Appear. A sale by an administrator, being a fiduciary act based upon statute, must show affirmatively, a strict compliance with the law."

2. "Jurisdiction—Evidence. Before a court can make a decree of sale it must obtain jurisdiction of the parties to be affected, by the production of proof of the service and publication of process required by law; nothing not shown to be done will be presumed."

In the case of Hurdman v. Wm. L. Short, Executor, etc., 18 Ill. 59 the syllabus reads:

1. "In a proceeding by an administrator to sell the real estate of his decedent, unless the mode pointed out by the statute for bringing the parties interested before the court is pursued, there will be such a want of jurisdiction as will vitiate the order for sale."

2. "Infant heirs, who have not guardians appearing for them, must be represented by guardians ad litem."

Montana borrowed her probate practice act from California, and in the case of Lamont v. Vinger, 202 P. 769, the Supreme Court of that state in a very thorough and well-reasoned opinion, noticed the opinion in Grignon's Lessee v. Astor, supra, pointed out where it did not apply under the laws of that state, and considered decisions from many states having a similar statute and announced its conclusions so far as they apply to the case at bar in the syllabus paragraphs 1, 6, 7, 9, 10, 12, 13, 15, 16, 17, and 18, as follows:

1. "At common law the administrator had no title to, interest in, or right to the pos-

session of real property, and could not maintain an action with respect to it, so that whatever authority he has now with reference to real estate is derived from the statute."

6. "Proceedings for the sale of realty of a decedent by his administrator are not strictly in rem, but only quasi in rem."

7. "The authority of the probate court to order a sale of realty is limited, and is derived from the statute, and therefore can be exercised only for the purposes mentioned and in the manner prescribed by statute."

8. "Jurisdiction to order the sale of realty by an administrator is invoked by filing the petition for sale, and is not included in the general jurisdiction over the administration, and the court is without authority to hear the petition under Rev. Codes, sec. 7565, until satisfactory proof has been made of service of the order to show cause."

10. "Failure to give the heirs notice of proceedings for the sale of real estate by the administrator and an opportunity to be heard in opposition thereto make the order for sale void."

12. "The fact that the heirs had an opportunity after notice to oppose the confirmation of the sale of real estate by the administrator does not cure the failure to give them notice before the order of sale was made."

13. "In judicial proceedings the law of the land requires a hearing before condemnation, and judgment before dispossession."

15. "Since a sale of real estate by an administrator divests the heirs of the title which vested in them at the intestate's death, an order for such sale can only be made after notice to the heirs, otherwise the property would be taken without due process of law and therefore Laws 1915, c. 4, sec 1, curing defects in sales by administrators, cannot validate a sale made without service of notice upon the heirs, even though the Legislature had power to repeal, so far as its future operation was concerned. Rev. Codes, sec 4819, vesting the realty in the heirs."

16. "Vested rights cannot be destroyed by the Legislature."

17. "A judgment, void when rendered, will always remain void."

18. "The validity of every judgment depends upon the jurisdiction of the court before it is rendered, and not upon what may occur subsequently."

See, also, Hartley v. Croze, 38 Minn. 325; Montour v. Purdy, 11 Minn. 384.

In the case of Kline et al. v. Shoup (Idaho) 226 P. 729, the Supreme Court of Idaho approved the rule announced by the Supreme Court of California, Montana, and Oregon, and in the first, second, and third syllabus paragraphs held:

1. "Probate courts, under the Constitution, have original and general jurisdiction of all matters concerning the probate and settlement of the estates of deceased persons. Their orders and decrees in such matters are entitled to the same verity as the orders and decrees of any other court of record."

2. "The sale of the real property of a decedent's estate is a sort of special proceeding in the administration of the estate, which is begun by the filing of the petition to sell the real property and is ended by the confirmation of the sale and the delivery of the deed to the purchaser."

3. "The power of the probate court to order a sale of land belonging to a decedent's estate arises not out of the jurisdiction which vested in that court at the time of the appointment of the administrator, but the jurisdiction to order such a sale results from the filing of a sufficient petition therefor and the issuance of an order to show cause why the sale proposed should not be made and due service thereof."

Section 11299, C. O. S. 1921, provides that:

"Succession is the coming in of another to take the property of one who dies without disposing of it by will."

And section 11300, C. O. S. 1921, reads:

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration."

These two provisions are exact transcripts of the California law except section 11300, supra, reads, "subject to the control of the county court," while the act of the 1890 Territorial Legislature of Oklahoma (St. 1890, sec. 6892) and the California Code (Civ. Code, sec. 1384) read, "subject to the control of the probate court." In the early case of Brenham v. Story, 39 Cal. 179, the Supreme Court of that state held:

"Upon the death of the ancestor, the heir becomes vested at once with the full property, and his estate is indefeasible, except in satisfaction of the liens above mentioned and the temporary right of possession of the administrator, and the Legislature has no more right to order a sale of his vested interest in his inheritance than it has to direct the sale of the property of any other person acquired in any other way."

See, also, Bates v. Howard, 105 Cal. 173,

38 P. 715. In the case of Pearson v. Pearson, 46 Cal. 609, that court held that an order or decree of distribution of an estate is void unless the order to show cause was published as provided by law, or personally served on all parties interested in the estate.

The California Code in force at the time the above decision was adopted, Cal. Civ. Code of Procedure, section 1539, was the same as section 1655, Wilson's Rev. & Ann. Stats. 1903, vol. p. 507, which provided that a copy of the order to show cause must be personally served on all persons interested in the estate, any general guardian of a minor so interested, and any legatee or devisee or heir of the decedent, provided they are residents of the county, at least ten days before the time appointed for hearing the petition, or by publication for four successive weeks in such newspaper of the county as the court, or judge, shall direct. If all persons interested in the estate join in the petition for the sale, or signify in writing their assent thereto, the notice may be dispensed with and a hearing may be held at any time. The codifiers made certain changes in this section in the Oklahoma Revised Laws of 1910, section 6374, (section 1278, O. S. 1931) ; by such revision the law requires that a copy of the order must be personally served "on all persons interested in the estate," and "any general guardian of a minor so interested," and any legatee or devisee or "heir" of the deceased, who are residents of the county where the administration proceedings are pending at least ten days before the time set for said hearing. In the case of Wingerter v. Wingerter, 71 Cal. 105, 11 P. 853, that court held that :

"It is settled law in this state, and has been ever since the decision in Beckett v. Selover, 7 Cal. 315, that on the application to sell the real estate the heir may dispute the validity of the claim on which the petition is based, although they have been allowed by the executor or administrator and probate judge; that the petition to sell is a substitute for an action against the heir, who must be cited, and then first has his day in court."

If, as held by the California court, and which seems to be the general rule, the petition to sell is a substitute for the action against the heir, who must be cited and then first has his day in court, it seems clear to us that the order to show cause must be served upon the heir, and if the heir has a general guardian, upon the general guardian of the heir, as the heir cannot

have his first day in court until he is served with notice or process in the manner provided by law, and a judgment rendered against such minor divesting him of his interest in real estate without such notice and hearing denies him due process under the federal and state Constitutions. We held in Re Jameson's Estate, 74 Okla. 286, 182 P. 518, that :

"An heir may raise objections to an approved claim at the hearing of petition of the administrator to sell real estate to pay said claim."

No judgment in a court is due process of law if rendered without jurisdiction in the court, or without notice to the party. Scott v. McNeal (U. S.) 38 L. Ed. 901. The words "due process of law," when applied to judicial proceedings, as was said by Mr. Justice Field, speaking for the Supreme Court of the United States, "mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." To give such proceeding any validity there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and if that involves merely a determination of the personal liability of the defendant, he must be brought within its jurisdiction by service of process within the state or his voluntary appearance. Pennoyer v. Neff, 95 U. S. 714. Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who had notice, either actually or by the things being condemned being first seized into the custody of the court. Scott v. McNeal, supra, p. 902. And such judgment is wholly void, if a fact essential to the jurisdiction of the court did not exist. Scott v. McNeal, supra. In the case of Old Wayne Mutual Life Association v. McDonough (U. S.) 51 L. Ed. 348, that court quoted with approval from Scott v. McNeal, supra, that :

"No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party."

The order to sell real estate in the county court of Tulsa county shows on its face that a copy of the order to show cause was not personally served upon the minors or a general guardian for said minors, the recital in the record being :

"That notice of said hearing has been duly made by mailing notices thereof to Maxine Banes and Kenneth L. Banes residing at No. 1, North Gillette avenue, Tulsa, Okla."

The Supreme Court of the United States, in the case of Galpin v. Page, 18 Wall. (U. S.) 350, 21 L. Ed. 962, says:

"It is undoubtedly true that a superior court of general jurisdiction proceeding within the general scope of its powers is presumed to act rightly. All intendments of law in such cases are in favor of its acts. It is presumed to have jurisdiction to give the judgments it renders until the contrary appears. And this presumption embraces, jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. The former will generally appear from the character of the judgment, and will be determined by the law creating the court or prescribing its general powers. The latter should regularly appear by evidence in the record of service of process upon the defendant or his appearance in the action. But when the former exists the latter will be presumed. This is familiar law, and is asserted by all the adjudged cases. The rule is different with respect to courts of special and limited authority; as to them there is no presumption of law in favor of their jurisdiction; that must affirmatively appear by sufficient evidence or proper averment in the record or their judgments will be deemed void on their face.

"But the presumptions which the law implies in support of the judgments of superior courts of general jurisdiction, only arises with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred. If, for example, it appears from the return of the officer or the proof of service contained in the record, that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that service was also made at another and different place; or if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also. Were not this so it would never be possible to attack collaterally the judgment of a superior court, although a want of jurisdiction might be apparent upon its face; the answer to the attack would always be that, notwithstanding the evidence or the averment. the necessary facts to support the judgment are presumed."

Also, that:

"It is a rule as old as the law * * * that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

So, in the case at bar the record disclosing the fact that the minors were served by mailing notices thereof to them at No. 1, North Gillette avenue, Tulsa, Okla., the record will be presumed to speak the truth and that no other service of notice was had, and the minors not having been personally served with notice, and their general guardian not having been personally served, the judgment of the county court of Tulsa county selling their real estate is absolutely void, and deprives them of due process of law in violation of the 14th Amendment to the federal Constitution.

In the case of Myles Salt Company, Ltd., v. Iberia & St. Mary's Drainage Dist. et al., 60 L. Ed. (U. S.) 392, the Supreme Court of the United States said:

"The contention that a state law as administered and justified by the highest court of the state violates the federal Constitution presents a federal question which will support a writ of error from the federal Supreme Court to the state court, although the state law as written is not attacked."

In the case at bar, section 1270, supra, of our Code provides proper notice to be given the minor heirs and their general guardian, and provides the manner of serving the same, and specifically states that a copy shall be personally served, and for this court to administer the law otherwise would deprive the minor heirs of a constitutional right and deny them due process of law guaranteed to them by the federal Constitution.

In the case of Beckett v. Selover, 7 Cal. 215, that court said:

"That our statute intended not only that the jurisdictional facts should actually exist, but that proper notice should then be given to bring the parties before the court in order to give it jurisdiction, would seem to be clear from its own language, which is exceedingly simple and precise."

The language in our statute 1278, supra, is equally simple and precise. The third

paragraph of the syllabus by the court in that case reads:

"Under our system the petition to sell real estate is the substitute for the action against the heir. The latter must be cited, and has a right to be heard."

In the body of the opinion the court uses this language:

"If giving notice was not necessary to give the court jurisdiction, then this particularity would not have been observed."

Defendants seem to overlook the distinction recognized by many courts of last resort between the position of a minor who was in fact the applicant through his representative to sell the real estate of the minor for his support and education or reinvestment, and that of parties having adverse interests in the property and are divested of their property to pay debts of an estate or expenses incurred by the administrator in administering the estate without being accorded an opportunity of contesting the validity of such claims. This fact is clearly apparent from the authorities upon which defendants rely for a reversal of this cause.

In the case of Comstock v. Crawford, 18 L. Ed. (U. S.) 34, the Supreme Court of the United States said:

"The record of the probate court, produced by the defendant, states the fact that a written application for the sale was made. It sets forth the application at length, representing that the personal property of the deceased was insufficient to pay his just debts by the sum of about $8,000; it gives the order directing publication of notice of the application; it recites that due notice was given; it contains a certificate of the probate justice of Illinois that the personal property of the deceased had been exhausted in payment of his debts, and that there remained debts unpaid to the amount named; and it states, by way of further recital, that it had been made to appear to the court that the sale was necessary and proper to pay such debts, of the existence and amount of which due proof had been given."

In that case the court further said:

"Similar questions were presented for the consideration of this court, in Grignon's Lessee v. Astor, 2 How. 319; Florentine v. Barton, 2 Wall, 210, 176 Ed. 783. That case turned upon the validity of proceedings for the sale of real property of an intestate under a statute almost identical in its provisions with the one under which the sale in the present case was made. And it was there held that the representation was sufficient to bring the power of the court into action: that it was enough that there was something

of record which showed the subject before the court, and that the granting of the license was an adjudication upon all the facts necessary to give jurisdiction. That decision disposes of the particular objections stated to the sale in this case."

The opinion in Comstock v. Crawford, supra, was delivered by Mr. Justice Field. Later, in the case of Mathias Mohr v. Anna N. Manierre (U. S.) 25 L. Ed. 1052, the Supreme Court of the United States, in an opinion delivered by Mr. Justice Field, after considering certain provisions of the statute of Wisconsin relative to the sale of a lunatic's real estate by a guardian, says:

"It is apparent, from these sections, that the publication of notice of the hearing is only intended for the protection of parties having adversary interests in the property, and is not essential to the jurisdiction of the court"

—and calls attention to the case of Comstock v. Crawford, supra, and, in commenting on Grignon's Lessee v. Astor, in construing the laws of Wisconsin, says:

"Its maintenance was held to be essential to the security of numerous estates in Wisconsin, where it is said many defects are found in the records of the proceedings of the probate courts in the early period of her history. It was adopted for many years by her courts, after she ceased to be a territory and became a state of the Union. It was well fitted for the repose of titles. Whether the reasoning of this court in other cases would not lead to some modification of its doctrine it is unnecessary to consider. As already intimated, there is no occasion to go to the full extent of the doctrine for the disposition of the present case. Here no parties claiming interests adverse to those of the lunatic are objecting to the license to sell, granted on his behalf and at his request through his guardian."

In the case of Mohr v. Tulip, 40 Wis. 66, the Supreme Court of Wisconsin held contrary to the rule announced by the Supreme Court of the United States, and held that:

"The statute requires that the order to show cause why the guardian of a lunatic shall not be licensed to sell the ward's real estate, 'shall be published at least four successive weeks before the day appointed for showing cause.' R. S., ch. 94, secs. 4, 48. Where the interval between the day on which such an order was first published and the day appointed for the hearing (including both days named) was two days less than four weeks; held, that the county court did not acquire jurisdiction to grant the license, and the sale was void."

In commenting on that case in Mohr v.

Manierre, supra, the Supreme Court of the United States said:

"In Mohr v. Tulip, the Supreme Court of Wisconsin overlooked the distinction between the position of the lunatic, who was, in fact, the applicant through his representative, and that of parties having adversary interests in the property."

Before passing it will be noted that Mr. Justice Field, who delivered the opinions of the Supreme Court of the United States in Comstock v. Crawford and Mohr v. Manierre, was a member of the Supreme Court of California when that court adjudicated the question that in proceedings to sell real estate the heirs were adverse parties, and that the statute requiring them to be served with a copy of the notice to show cause was mandatory and jurisdictional.

In the case of Bloor et al. v. Smith et al., 87 N. W. 870, at page 872 of the opinion, the Supreme Court of Wisconsin said:

"In settlement of estates, title may be passed to raise money to pay debts, but only by virtue of chapter 167, Rev. St. 1898, and in strict compliance therewith. The interests of minors may be conveyed under some circumstances, but only because of express statutory authority and by the steps prescribed. Chapters 151, 171, Id. In all these cases the proceeding to authorize sale of real estate is extrinsic to the general proceeding in which such real estate is involved, and the court has no jurisdiction over the parties in interest for the special proceeding, merely because jurisdiction over them has been acquired for the general one. Notwithstanding parties are before the county court for the purpose of the settlement of the estate, jurisdiction must be again acquired over them by due notice, or the proceedings, under chapter 167, Id., will be void as to such as are not notified and do not appear. Gibbs v. Shaw, 17 Wis. 197, 84 Am. Dec. 737, McCrubb v. Bray, 36 Wis. 333; O'Dell v. Rogers, 44 Wis. 136, 172. In the light of the uniform policy of the law evinced by such statutes, and the decisions of courts thereon, we cannot doubt that the power of the county court over real estate titles in the hands of testamentary trustees is strictly limited by section 4030, Rev. St. 1898, and that acts in violation thereof are not only erroneous, but beyond its power, and void as to those over whom personal jurisdiction is not obtained by notice or by their appearance or assent."

The case of Goodrich v. Ferris, 214 U. S. 71, 53 L. Ed. 914, relied upon by defendants is not in point. The only question there decided by the Supreme Court of the United States was that ten days' statutory notice of the time appointed for action upon a petition for the settlement of the final account

of an executor and for the final distribution of the decedent's estate is not so unreasonable as to a nonresident claimant as to be wanting in due process of law. The court held that only in a clear case will a notice authorized by the Legislature be set aside as wholly ineffective on account of the shortness of time. This case involved a construction of the statute of California relative to the notice of final settlement of estates, and in the case of William Hill Co. v. Lawler, 116 Cal. 359, 48 P. 323, cited with approval in that case by the Supreme Court of the United States, the Supreme Court of California held that:

"Code Civ. Proc. sec. 1666, declares that, on final distribution of an estate, the decree must name the persons and their shares, and shall be conclusive as to the rights of parties unless appealed from. Section 1678 provides that such distribution may be made though some of the heirs, etc., have conveyed their shares, and that such shares must be assigned to the person holding the same. Held, that a decree, after due notice, distributing to certain heirs a particular tract of the community estate, was, in the absence of an appeal, conclusive on one to whom the widow had conveyed an undivided half of said tract pending distribution."

In that case notice of final settlement was given by publication as required by the laws of the state of California, and was in the general proceedings in which such real estate was involved and was not extraneous thereto as heretofore pointed out.

In Spade v. Morton, 28 Okla. 391, 114 P. 727, this court held that a sale of land of a minor made by a guardian under order of court is not void on collateral attack for failure to give notice; Eaves v. Mullen, 25 Okla. 701, 107 P. 433, decree confirming sale at public auction by guardian of ward's real estate is not rendered void on collateral attack because notice of such hearing was given only nine days, instead of ten, as directed by order of court fixing date for hearing. Each of these cases is clearly distinguishable from the case at bar for the reason heretofore stated, that the courts generally hold that in guardianship sales the guardian is the representative of the minor or incompetent, and that the minor or incompetent is not an adversary party.

It is held in Goodrich v. Ferris, supra, that:

"It is elementary that probate proceeding by which jurisdiction of a probate court is asserted over the estate of a decedent for the purpose of administering the same is in

the nature of a proceeding in rem, and is therefore one as to which all the world is charged with notice. And that the law of California conforms to this general and elementary rule is beyond question."

In that case the court was considering the final settlement of the administration proceedings and not the special proceedings in the administration proceeding by petition, order to show cause and reasonable notice of the time and place of hearing said petition, to sell the real estate to pay debts and divest the minor heirs of their property. We have no fault to find with the rule of law there announced. It applies to the general administration proceedings step by step to the final settlement and distribution of the estate in the manner and upon the notice provided by law, but the court has no jurisdiction over the parties in interest for the special proceedings merely because jurisdiction over them has been acquired for the general one, which is clearly pointed out in the California decisions and provided for in our statute, section 1067, supra, which provides that the probate jurisdiction must be exercised in the cases and in the manner prescribed by statute, and we have failed to find a decision by a court construing laws similar to those of California, Idaho, Oregon, Montana, New York, Minnesota, and the other states from which we have cited authorities, and the laws of this state which make the heirs adversary parties to the administrator in the special statutory proceeding to sell real estate in a manner and upon notice to them, that hold to the contrary.

The distinction between sales made by an administrator under a special proceeding in the administration proceedings to pay debts of the estate and the expenses of administration, and the proceedings by a guardian to sell his ward's land for the purpose of supporting and educating the minor or reinvesting the funds in other property, is clearly pointed out in the case of Scarf v. Aldrich (Cal.) 32 P. 325, and Hunter v. Buchanan et al. (Neb.) 127 N. W. 166, and cases there considered.

Some of the opinions from other states considered and discussed in this case disclose that under the laws of those states provision is made for appointing a guardian ad litem for the minors. Under the statutes of some of the states, it is mandatory. That issue is not involved in the case at bar, and we are not passing upon it.

Counsel for defendants contend that the stability of land titles is the paramount issue in cases of this nature. The question

is—whose land title? Is it the land title of the helpless minors that vested in them immediately upon the death of the person from whom under the law they are entitled to inherit, subject to the control of the deceased person's estate by the probate court and the power granted the probate court to divest the minor of his interest in the real estate upon a compliance with the Constitution and statute laws of the state and the Constitution of the United States? Or, is it the land title of the purchaser who buys the property at an administrator's sale, with knowledge imparted by the record that the statutory requirements relating to making the sale have not been complied with? The warning given to purchasers by Judge Brewer in 1878, in the case of Mickel v. Hicks, reported in 19 Kan. 578, supra, and followed in many other decisions, should be observed by purchasers. We recite what he there said:

"While therefore judicial sales ought to be upheld as against any mere errors, yet it is not too much to require purchasers at such sales to examine the records so far as to see that the adverse parties received proper notice of the proceedings, and had therefore the opportunity to contest them."

In the case of In re Estate of John Hildebrand (Taylor et al. v. White et al.), 81 Okla. 197, 197 P. 445, this court in the second syllabus paragraph held that:

"It is the duty of the courts to guard with jealous care the rights of minors in actions brought against them, or in which their rights are affected, and the courts should never deprive them of those rights, unless it clearly appears that their adversaries are entitled to the relief sought. No presumption against an infant can be permitted, but, on the contrary, every presumption is indulged in his favor."

And, in the recent case of Mosier v. Aspinwall, 151 Okla. 97, 1 P. (2d) 633, this court, in an opinion delivered by Mr. Justice Cullison, approves the rule announced in Midland Savings & Loan Co. v. Carpenter, 137 Okla. 204, 279 P. 310, quoting from that case the following:

"It is the imperative duty of a court to guard the rights of minors in actions brought against them, and, in case of a failure of a guardian ad litem to properly discharge his duty in that or any other respect, it then becomes the duty of the court to protect such rights"

—and cited in support thereof many former decisions of this court.

Section 1135, O. S. 1931, provides that the

administration of the estate of a person dying intestate must be granted to some one or more of the persons mentioned in the section, and further provides that they are respectively entitled thereto in the order named in said section; and section 1143, in the proviso in said section, provides that if the petition seeks the appointment of some person entitled under the law to appointment and shall accompany such petition with a waiver of all persons having a prior right to appointment, then no notice shall be given, and the court shall proceed without delay to hear such petition.

In the case of Scott v. McNeal, supra, the Supreme Court of the United States held that:

"Even a judgment in proceedings strictly in rem binds only those who could have made themselves parties to the proceedings, and who had notice, either actually, or by the thing condemned being first seized into the custody of the court."

So, where an administrator may be appointed without notice to the heirs, certainly the property that vested in the minors upon the death of their father was not brought into the administration proceedings for the purpose of sale to pay debts of the estate until the minors had notice imparted to them in the manner provided by law.

In the case of Oil Well Supply Co. v. Cremin, 143 Okla. 57, 287 P. 414, this court, in an opinion delivered by Mr. Justice Andrews, said:

"Distribution is made on petition and notice thereof is required to be given by posting or publication as the court may direct. Section 1362, C. O. S. 1921."

If distribution is required to be made upon petition and notice, the real estate is not brought into the probate court for that purpose until the petition is filed and notice given as required by law, and the property is not brought into the administration proceedings for the purpose of selling the same to pay debts and costs of administration until a petition is filed and a time and place fixed by the court for hearing the petition and notice thereof given as required by law. Sections 1276, 1277, 1278, O. S. 1931.

Defendants also rely upon the case of Magnolia Petroleum Co. v. Mayer et al., 58 F. (2d) 48, an opinion by the United States Circuit Court of Appeals, 10th Circuit. It appears from an examination of that case that the heirs contended that the sale was invalid (1) because the land was the homestead of the testator and not subject to administration; (2) that there was want of jurisdictional notice to them in the sale proceeding; and (3) the two heirs not named in the will asserted the sale was also invalid because they were not parties to the proceedings. The court found that the land involved was not the homestead, and that the probate court of Lincoln county had jurisdiction of the probate proceedings; and relative to notice said:

"A proper order was made for the service. There was a proof of the service of the order by affidavit, which recited John McCowan was notified by mail at Perkins (Payne county) Okla., a copy was delivered to Mary McCowan, mother of Henry McCowan and Frank McCowan, minors in her custody, to Haley Evans and Alice Robertson, and three copies were posted in the three public places. If the matter of service was vital, it was incumbent on those challenging the sale to prove there was no other service. But there was no such showing."

The opinion does not disclose the residence of the parties served in the manner set out in the opinion. If they were not residents of Lincoln county the service may have met the requirements of the statute. It is not stated in the opinion what, if any, facts were set out in the order authorizing the sale showing the manner of service. If the judgment roll does not disclose the manner in which service was made and there was a general finding and order or judgment approving the service of notice, then we would agree with the federal court that a court of general jurisdiction proceeding within the general scope of its powers is presumed to have jurisdiction to give the judgments it renders until the contrary appears, and this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also. This in our opinion is all that was decided in Grignon's Lessee v. Astor, supra. But, the presumptions which the law implies in support of the judgments of superior courts of general jurisdiction only arise with respect to jurisdictional facts upon which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. Galpin v. Page, supra. A judgment is void on its face when its invalidity is affirmatively disclosed by an inspection of the judgment roll. Savoy Oil Co. v. Emery, 137 Okla. 67,

277 P. 1029. We do not agree with the Circuit Court of Appeals of the United States that under our probate law the special proceeding by petition to sell real property upon notice and an order after a hearing to pay debts of an estate and expenses of administration is a proceeding in rem, and refuse to follow the rule upon that issue as declared by that court. We have carefully considered our probate law and that of many other states, and the opinions of said states construing similar laws, and adhere to the views of those courts which hold the proceeding adversary, so far as the heirs are concerned, and notice to them jurisdictional. It is a well established rule of law that the federal courts are bound to follow the decisions of the highest courts of the state upon questions relating to the construction of the state Constitution, of the validity thereunder of state statutes. This rule is applied though the construction given to the statute may be different from the construction which the federal court, if it were exercising its own independent judgment, would give thereto. The federal courts are entitled to decide for themselves where the question involves a federal question, or a question with respect to the Constitution of the United States, or where following the state decision would conflict with or impair the efficiency of some principle of the United States Constitution, or an act of Congress, or involve a violation of the Constitution, treaties, or statutes of the United States. This question seems to be well settled as an examination of the many cases set out in the annotation of paragraph 171, vol. 25, C. J., 832, will disclose.

There are other cases upon the first proposition cited in the brief of defendants, which they contend sustain their position, but they all relate to guardianship proceedings, and we have pointed out herein that such decisions do not apply to administration proceedings where the administrator is selling the estate of an heir and divests the heir of title to pay debts of deceased and the estate or expenses of administration.

It is next contended by the defendants that the guardian herein is barred by the statute of limitations from maintaining this action. This contention of defendants is settled against them by the statute. Section 99, O. S. 1931, provides in part:

"Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter: * * *

"Second. An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person; or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale."

Section 100, O. S. 1931, provides:

"Any person entitled to bring an action for the recovery of real property, who may be under any legal disability when the cause of action accrues, may bring his action within two years after the disability is removed."

See these two sections in the statutes and the authorities cited in support thereof. Then we have a special statute of limitations under the Probate Code. Section 1311, O. S. 1931, provides that:

"No action for the recovery of any estate sold by an executor or administrator, under the provisions of this article, can be maintained by any heir or other person claiming under decedent, unless it be commenced within three years next after the sale. An action to set aside the sale may be instituted and maintained at any time within three years from the discovery of the fraud or other grounds upon which the action is based."

And section 1312, O. S. 1931, that:

"The preceding section shall not apply to minors, or others under any legal disability to sue at the time when the right of action first accrues; but all such persons may commence an action at any time within three years after the removal of the disability."

See authorities cited under these two sections.

The defendants' third proposition is that the guardian herein is estopped from maintaining this action. The case of Elrod v. Adair, 54 Okla. 207, 153 P. 660, settles this issue adversely to the contention of the defendants. This court there said:

"The further point is made that, even if the evidence is sufficient and the court had jurisdiction, yet that the relief should be denied, because the guardian bringing the suit participated in the fraud, and is therefore in a court of equity without 'clean hands.' So he is. It takes no second look or microscopic view to see how seriously —yea, how pitifully—his hands are stained; to see that he put himself in such a position, by his contract with Wilkinson, that the less he got for his child, the more he

got for himself. But this does not defeat the suit of the innocent minor. This is the minor's suit; he owns the subject-matter. If relief comes, it is his relief. The doctrine that the sins of the father may be visited on the children 'even to the third and fourth generation' (Exodus, XX, 5) does not apply."

Neither does it apply to a surety on the administrator's bond as guardian for the minors in the case at bar. The minors, not the guardian, own the subject-matter. It is the minors' suit.

The last proposition urged by defendant is that the judgment herein is contrary to the law and to the evidentiary facts disclosed by the record. The motion for judgment on the pleadings and the record discloses that the minor plaintiffs were not personally served with notice of the hearing of the petition to divest them of the property inherited by them from their father's estate which vested immediately in them upon his death.

It is contended by the defendants that the property was encumbered for more than it was worth, and that the minors only inherited the equity, if any, in the land involved. The title to the land vested in the heirs immediately upon the death of the father subject to the control of the probate court, and if necessary a sale thereof to pay decedent's debts and expenses of the administration proceedings, and a time and place fixed for hearing a copy of the order to show cause being served in the manner provided by law. The record clearly shows this was not done, and we must affirm the decision of the trial court finding and holding that the sale was void.

The defendants did not ask for any affirmative relief, but elected to stand upon the purported title conveyed by the administrator's deed based upon a void sale. They did not ask to be subrogated to the rights of the mortgagee, and that issue is not before the court for consideration at this time. The only issue before this court is the validity of the sale made by the administrator. We are not passing upon any equitable issues which the parties may invoke in adjusting their rights.

We are of the opinion, and hold, that the sale was void, and that the judgment of the trial court should be, and is, in all things affirmed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, and WELCH, JJ., concur. BAYLESS and BUSBY, JJ., dissent.

BUSBY, J. (dissenting). I am unable to concur in the views and result announced in the majority opinion in this case. The rule approved and applied therein will have a disastrous effect upon many real estate titles in Oklahoma which have long been considered stable and secure. The result is illustrative of the danger which invariably follows an abrupt change by judicial decisions of established rules of law upon which titles to real estate depend. If established rules of law affecting real property are erroneous, any needed change should be accomplished by a legislative act prospective in its operation, rather than by a judicial decision, which is retroactive in effect.

This is a suit in the nature of ejectment and a quiet title action commenced in the district court of Oklahoma county by Kenneth Lee Banes and Maxine Banes, minors, through their guardian, Oscar Cobb. Their mother, who was the natural guardian, and who had their care and custody after the death of their father, filed a petition in the Tulsa county court, as administratrix of the father's estate, to sell the land involved, which land is located in Oklahoma county. Oscar Cobb, grandfather of the children and now their guardian, was principal bondsman of the administratrix. There is no fraud alleged or proved in connection with the sale proceedings and no question of fraud is raised herein. The property was sold to the highest bidder after proper advertisement, and we must assume for its full value, the purchasers assuming and subsequently paying off a mortgage existing against the same, and paying in addition a part cash consideration which was used in paying debts and for the expenses of the last illness of Wilbert A. Banes, deceased. After confirmation of that purchase and delivery of administratrix's deed by the mother of the minors herein, the purchaser entered upon the property. By subsequent purchase the Seals became owners of the same and improved it. Their title was unquestioned for 9 years. When it became valuable after the discovery of oil thereon, this suit was filed to recover possession of two-thirds interest. The majority opinion strikes down the validity of the title because of the manner of service upon the minors of notice of the order for hearing petition for sale of real estate by administratrix. These minors were aged two and four, respectively, at the time of the sale. Notice by publication of

the hearing in a legal newspaper was had, and the order of sale with reference to the minors recited "that notice of said hearing had been duly made by mailing notice thereof to Maxine Banes and Kenneth Lee Banes residing at No. 1, North Gillette street, Tulsa, Oklahoma."

The legal point involved herein centers around the mailing of the notice to the children at their home where their mother, who was their natural guardian, lived with them. The majority opinion holds the delivery by mail insufficient, and says that the notices should have been personally served on the two minors.

Stripped of all legal verbiage, the effect of the opinion is that Seal's title is void because a kindly-faced mailman making his daily call delivered notices to the minors instead of the notices being placed in their hands by a grim faced deputy sheriff or an armed-to-the-teeth constable clothed with all the pomp and dignity vested in him by the majesty of the law. Or, the opinion holds, in effect, if these minors had been residing in a county other than Tulsa, in which county the administration proceedings were pending, then the delivery of the notices to their address by the mailman would have satisfied the statute and Seal's title would have been good. But under the present state of facts the title remains in the minors. Of course, we know judicially that the two and four year old minors could not have read and understood the notices in question regardless of whether they had been delivered by the deputy sheriff in Tulsa county, or by the mailman had they resided beyond the limits of the Tulsa county line. But, according to the reasoning in the majority opinion, notice by the last method would have had the magical effect of leaving legal title in Seal. Whereas the opinion now vests it in the Banes minors. This is a sort of legal alchemy to which I cannot subscribe. It denotes a legal ability "to sever and divide a hair 'twixt north and northwest side."

It may be argued that the foregoing observations have only a practical appeal, and that they do not bear directly upon the legal problems involved. They do serve, however, to illustrate the failure of the refined legal reasoning upon which the majority opinion is based to take cognizance of the utter absence of a practical distinction between the manner in which the order to show cause was actually served in this case and the manner in which it is said it should have been served in order to constitute a literal compliance with the statute. I do not believe purchasers in good faith for value should be divested of their property by reason of a technical distinction in the manner of service which could have made no distinct difference, either upon the persons served or to the county court having jurisdiction of the estate. The mother, aided by the grandfather, Oscar Cobb, who executed the administratrix's bond, and who now files this suit for the minors, placed the machinery of the courts in operation by filing the petition to sell the land. If the notices had been handed to the children aged two and four in person, as the majority opinion says should have been done, and these notices in turn taken from them by the mother, the whole procedure would have been an idle gesture. Why, through the medium of two infants, should an instrument be returned to a natural guardian who had the instruments issued and who was functioning in the capacity of administratrix of the father's estate, natural guardian and mother, and next of kin having the care and custody, and, presumably, the best interest of her children at heart? Does the stability of land titles in Oklahoma depend upon such a useless legal ritual?

Recognizing, however, that the decision of this court should be rendered upon sound legal reasoning and judicial precedent, I return to a consideration of the fundamental principles of law involved in the case at bar.

Many of our sister states have adopted the principles recognized in the majority opinion. That is, that there must be a literal compliance with the statute in connection with probate sales. If I could turn back the wheels of time for a period of 30 years and consider the question of law presented herein as an original question and decide it herein for the first time, I might without difficulty subscribe to the doctrine announced by the majority of this court. Since that is impossible, and since I believe we have heretofore in this jurisdiction directly and by implication settled the questions involved herein, a sense of judicial duty compels me to announce that the controlling question in this case should be: What is the established law of this state? Not what should the law be? In my judgment, the majority of my associates have committed the serious error of announcing what they believe the law in Oklahoma should be now, and have entirely ignored the established rule of property which we have followed since the decision in the case

of Eaves v. Mullen, 25 Okla. 679, 107 P. 437, rendered nearly 24 years ago. That opinion was written by former Chief Justice Samuel W. Hayes, one of the ablest members of this court. It has been followed by the bench and bar of Oklahoma and by the United States Circuit Court of Appeals in construing Oklahoma decisions, and by the Supreme Court of the United States in denying a writ of certiorari. Magnolia Petroleum Co. v. Mayer, 58 F. (2d) 48, certiorari denied Brown v. Magnolia Pet. Co., 289 U. S. 618. The majority opinion, in theory, if not in fact, overrules the doctrine of Eaves v. Mullen, supra, which has been cited and followed in approximately 55 cases since its promulgation. It has become an established rule of property in this jurisdiction, and its application to the case at bar would settle the question involved and would confirm the title in question in the Seals and recognize their title as an established and vested property right.

The majority opinion herein cites 40 cases from other states and from text-books to show the holdings in other jurisdictions on the question involved herein, and to prove that the Supreme Court of Oklahoma adopted the wrong theory nearly 25 years ago. It attempts to argue around the doctrine of Eaves v. Mullen, supra, which was bottomed upon the doctrine laid down by the United States Supreme Court in the case of Grignon's Lessee v. Astor, 11 L. Ed. 283, nearly 90 years ago.

I believe the original opinion herein, written by Justice Bayless and published in 27 P. (2d) 839, was correct. That opinion was adopted by this court on July 5, 1933, rehearing denied December 19, 1933, then rehearing granted on March 13, 1934, and the majority opinion herein written by Mr. Justice Swindall was adopted by this court on the 15th day of May, 1934. Especially apropos is that part of the opinion (of July 5, 1933) reading as follows:

"We may as well say now that a proceeding for the sale of real estate in an administration or guardianship proceedings is a proceeding in rem. We recognized this rule in the case of Eaves v. Mullen, 25 Okla. 679, 107 P. 433, when we cited with approval and quoted from the case of Grignon's Lessee v. Astor, 2 How. 319, 11 L. Ed. 283, which case has been followed by Mohr v. Manierre, 101 U S. 417, 25 L. Ed. 1052, and Goodrich v. Ferris, 214 U. S. 71, 29 S. Ct. 580, 53 L. Ed. 914. Perhaps some uncertainty existed in the minds of the bar as to whether we intended to adopt and follow this rule, for it was raised in the case of National Exploration Co. v. Robins, 140 Okla. 260, 283 P. 236, 238, and we said: 'It is quite generally held that proceedings of this nature are proceedings in rem. * * *' and, later followed it in Jent v. Jent, 145 Okla. 74, 291 P. 529. The Circuit Court of Appeals for the Tenth Circuit has placed the same construction upon our probate laws in the case of Magnolia Petroleum Co. v. Mayer, supra. Therefore, the cases from other jurisdictions cited and relied on by the plaintiffs cannot apply.

"* * * And we have held that such proceedings were in rem and all the world including the minors and their general guardian were parties and subject to the jurisdiction of the said court with relation to said property; therefore, all of the essentials of jurisdiction were present. The notice of the order to hear required to be given did not inhere in the substance of the order to sell, asked to be made, but was merely a step in the procedure.

"We began to hold that after a county court obtains jurisdiction of an administration or guardianship proceedings, irregularities and defects in the steps of the various proceedings had therein, and particularly in the instance of sales, between the acquirement of jurisdiction and the order of confirmation, are cured by the order of confirmation to the extent that the order of confirmation may not be collaterally attacked, in Eaves v. Mullen, supra, and we have since consistently applied this rule. In the very late case of Factor v. Perkins, 164 Okla. 20, 22 P. (2d) 391, we announced that it had become a rule of property law.

"We do not mean to say that there may not be found in our reported cases isolated cases constituting exceptions to this rule, such as Caulk v. Lowe, 74 Okla. 191, 178 P. 101, where there was no notice at all and the moving parties were guilty of fraud upon the court extrinsic of the record; or Beatty v. Beatty, 114 Okla. 5, 242 P. 766, where there was no notice; or Mullen v. Hawkins, 97 Okla. 30, 222 P. 697, where there was no notice or knowledge on the part of the ward, a minor over 14 years of age, of the pendency of the proceedings, no notice or opportunity to nominate the guardian. the order of sale was made on the same day the petition for authority to sell was filed and entirely without notice, and fraud was shown, extrinsic of the record; or Good v. First Nat. Bank of Roff, 88 Okla. 110, 211 P. 1051, where there was a summons served but not served on the husband or a member of his family, but no service of the notice of application to revive after his death, nor was there any service of summons or notice of application to revive upon his wife; or LeClair v. Calls Him, 106 Okla. 247, 233 P. 1087, a divorce action in which there was no service of summons, and the purported voluntary entry of appearance was forged; or Pettis v. Johnston,

78 Okla. 277, 190 P. 681, where there was no service of notice and fraud, extrinsic of the record, was alleged and proved; or Jent v. Jent, supra, where the executor was appointed on March 13th, probably without notice, and filed his final report and was discharged on March 19th, only six days later, entirely without notice. The distinction between a complete failure to give notice, and merely defective or irregular notice, has always been observed; and proof of fraud extrinsic of the record has always been permitted to be shown to void a judgment or order tainted thereby, in probate cases as in civil cases. In this case notice was given, although irregular, defective and less than that required by statute, but no fraud is alleged or proved. Therefore the sale in this case cannot be collaterally attacked."

In this dissent I propose to establish: (1) The existence of a recognized rule of law supported by able authority and judicial precedent from many states, including Oklahoma, that proceedings for the sale of real estate are merely an integral part of a larger proceeding in rem (the entire administration of the estate), and that the court has jurisdiction of the res from the institution of the administration. (2) That as a component part of this rule or legal theory notice of an application for an order to sell real estate is directory and not jurisdictional. (3) That in jurisdictions where this principle is recognized an improper notice, or even a total failure to give notice to heirs, does not render a title acquired through administrator's sale open to a successful collateral attack. (4) That the in rem theory in connection with probate sales has become an established rule of property in Oklahoma. (5) That an application of this rule to the case at bar would confirm the title of Seals herein and recognize the same as an established and vested property right.

It is important to bear in mind the classification of actions with respect to the nature of the court's jurisdiction in administration proceedings. Jurisdiction of a court is the right to hear and decide a controversy; the right to adjudicate concerning the subject-matter in a given case. It may be exercised in one of two modes, in personam or in rem. An action which has for its object a judgment against a person as distinguished from a judgment against property to fix or establish its status is said to be in personam, whereas a proceeding in rem has for its object a judgment against property to determine its status and to provide for a disposition of the property without reference to the title of the individual claim-

ants. 1 R. C. L. 328; Cushing v. Cummings, 72 Okla. 176, 179 P. 762.

The distinction is of paramount importance in this case. When an action is in personam the requirements of notice to the individual sought to be subjected to the jurisdiction of the court are rigid and exacting. On the contrary, when the jurisdiction of the court is in rem the seizure of property itself imports a degree of notice to those who may claim to be the owners thereof, and the requirements of other additional notice are extremely liberal. As was said by Mr. Justice Field, speaking for the Supreme Court of the United States, in the case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, at page 570:

"The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale."

A proceeding in rem may also be adversary in its nature. Pennoyer v. Neff, supra. In fact, such proceedings frequently operate to divest owners or claimants of their interest or title in property by subjecting the particular property seized to the payment or satisfaction of a claim or demand. While the use of any property, real or personal, belonging to a decedent in payment of his debts may be said to be adverse to the interest of the heirs, and while the administrator in paying the debts of a decedent from the assets of the estate may be said to be acting adversely to the heirs, yet I am unable to perceive why this adversity of interest does not come into existence at the commencement of the administration proceedings. The heirs must know as a matter of law when an administrator is appointed that the debts of the decedent take precedence over their right to inherit or participate in distribution. They must know that real estate as well as personal property may be subjected to this burden. Having knowledge of duties of an administrator and the fact that one has been appointed and has taken charge of the property of the deceased, I perceive no serious objection to a judicial declaration that the county court has acquired jurisdiction in rem over the property of the deceased for the purposes of administration, which includes the power to sell real estate in order to pay the debts of the deceased; that the method prescribed by statute and the notice provided are merely procedural

steps describing the methods in which the jurisdiction in rem previously acquired shall be exercised.

As previously observed, two distinct views have found favor with the courts, but the majority opinion herein recognizes and applies in this case only one. Van Fleet in his admirable work on Collateral Attack recognizes both. The view which the majority of this court now adopts in this case is stated at page 404, paragraph 406. On the other hand, the learned author gives equal prominence to the theory that proceedings for the sale of real estate in administration proceedings are in rem, and notice is not jurisdictional. At page 402, paragraph 405, he states:

"It is held in Alabama, Arkansas, Louisiana, Texas, and Washington, that a proceeding by administrator to sell land is in rem; that the petition gives the jurisdiction, and that the **failure to give the notice or bond prescribed by statute is merely an error which does not make the proceeding void.**" (Emphasis mine.)

The principle recognized in the foregoing rule is supported by the following judicial authority: Grignon's Lessee v. Astor, 2 How. 319, 11 L. Ed. 283; Howell v. Hughes, 168 Ala. 460, 53 So. 105; Neville v. Kenney, 125 Ala. 149, 28 So. 452, 82 Am. St. R. 230; Friedman v. Shamblin, 117 Ala. 454, 23 So. 821; Lyons v. Hamner, 84 Ala. 197, 4 So. 26, 5 Am. St. R. 363; Field v. Goldsby, 28 Ala. 218, 65 Am. Dec. 341; Doe v. Riley, 28 Ala. 164, 65 Am. Dec. 334; Wyman v. Campbell, 6 Port. 219, 31 Am. Dec. 677; Apel v. Kelsey, 47 Ark. 413, 2 S. W. 102; Montgomery v. Johnson, 31 Ark. 74; Rogers v. Wilson, 13 Ark. 507; Hatfield v. Richmond, 161 Ky. 352, 170 S. W. 951; Wright v. Steed, 10 La. Ann. 238; Yeakel's Est., 22 Pa. Dist. 617; Blackman v. Mulhall, 191 S. D. 534, 104 N. W. 250; Lyne v. Sanford, 82 Tex. 58, 19 S. W. 847, 27 Am. St. R. 852; Heath v. Layne, 62 Tex. 686; Hurley v. Barnard, 48 Tex. 83; George v. Watson, 19 Tex. 354; Littlefield v. Tinsley, 26 Tex. 353; Finch v. Edmonson, 9 Tex. 504; Ryan v. Fergusson, 3 Wash. 356, 28 P. 910.

In the case of Grignon's Lessee v. Astor et al., 2 How. 319, 11 L. Ed. 282, an **administration case** involving the validity of a sale of real estate, the highest court of our land said:

"* * * On a proceeding to sell the real estate of an indebted intestate, there are no adversary parties, the proceeding is in rem, the administrator represents the land (11 S. & R. 432); they are analogous to proceedings in the admiralty, where the only question of jurisdiction is the power of the court over the thing, the subject-matter before them, without regard to the persons who may have an interest in it; all the world are parties. * * *

"As the jurisdiction of such courts is irrespective of the parties in interest, our inquiry in this case is whether the county court of Brown county had power to act in the estate of Peter Grignon on the petition of the administrator under the law of Michigan, providing that where the goods and chattels of a decedent are not sufficient to answer his just debts, on representation thereof, and the same being made to appear to the county court where he dwelt, or where his real estate lies, it may license the executor, or administrator, to make sale of so much as will satisfy the debts and legacies."

The case of Grignon's Lessee v. Astor. supra, has an added and peculiar significance in this jurisdiction. The doctrines herein announced were expressly approved by this court in Eaves v. Mullen, supra. Justice Hayes, speaking for this court, said in that case:

"By following the rule in Mohr v. Manierre and Grignon's Lessee v. Astor et al., we adopt a rule which may be applied with uniformity to all conveyances in **probate proceedings**, whether occurring in the Indian Territory or Oklahoma Territory, or in the state after its admission."

The doctrine recognized by the United States Supreme Court in Grignon's Lessee v. Astor and approved by this court nearly a quarter of a century ago is diametrically opposed to the theory upon which the majority opinion is based. The majority opinion attempts to distinguish Eaves v. Mullen on the theory that it involved a guardianship sale. The important fact is overlooked that, although Eaves v. Mullen is a guardianship case, the rule and principle it follows and approves is taken directly from an **administration case,** and the rule is expressly declared to be applicable to **"all conveyances in probate proceedings" which include sales and conveyances by administrators.**

In the case of Steele v. Kelley, 32 Okla. 547, 122 P. 934, a case involving a collateral attack on administration sale arising under the law of Indian Territory, we expressly approved again the doctrine of Grignon's Lessee v. Astor et al., supra, and Eaves v. Mullen, supra, as applicable to **administration proceedings,** and applied it in holding that a demurrer should have been sustained to a petition in which it

was alleged in attacking the probate sale that "plaintiffs had no notice either actual or constructive of said proceedings until long after the sale of said property." This decision, written by Judge Sharp, follows only two years after that of Eaves v. Mullen. With reference to the fact that the statute had not been complied with regarding notice to certain heirs or devisees who sought to cancel the administrator's deed, Judge Sharp, at considerable length, outlined and approved the Arkansas decisions, quoting particularly from Rogers v. Wilson, 13 Ark. 507, as follows:

"And although it was clearly erroneous to have granted the order for the sale of the real estate without first having given the notice required by the statute, the order was not void, because it was made in a proceeding in rem, for the sale of the estate, which, by our statute, is made assets in the hands of the administrator, and over which by petition the probate court had jurisdiction, and further, and although after the sale of the said property shall have been made, the court might not feel at liberty in most instances to disturb the sale, but would leave the heir, if aggrieved, for his recourse over against the administrator, yet before the sale, there can, we apprehend, be no very good reason why the administrator cannot be restrained from perpetrating the wrong complained of."

Judge Sharp then refers to the case of Sturdy v. Jacoway, 19 Ark. 510, as the leading case, quoting therefrom as follows:

" 'That an order of the probate court for the sale of the real estate of a deceased person is a judgment in rem, and, being the judgment of a court of competent jurisdiction upon a set of facts within the scope of its legitimate powers, imports the necessity for the sale and cannot be adjudged and held for naught collaterally upon the ground that the court erroneously exercised its powers; nor can the proceedings and sale under such judgment or order, reported to and confirmed by the probate court, be impeached collaterally; nor the title called in question for any omission in obtaining the order for sale or other irregularity'."

From the later case of Montgomery v. Johnson, 31 Ark. 74, Judge Sharp quotes:

" '* * * The administration of the deceased person is committed to the jurisdiction of the courts of probate, and upon the grant of letters testamentary, or of administration, the court acquires jurisdiction of the estate and proceeds in rem."

In the recent case of Estes v. Pickard, 144 Okla. 60, 283 P. 1004, the doctrine of Eaves v. Mullen was again applied with approval to an attack upon **an administration** sale in which the sufficiency of the notice to support the sale proceedings was questioned, and in which minor heirs were asserting a sale should be declared void for the reason among others that they did not receive notice. The sale was held valid.

I maintain that in the face of the foregoing landmark decisions the lawyers of this state, in passing upon the marketability of titles which depended upon administration sales of decedents' property, were justified in believing that a rule of property had been established to the effect that proceedings for the sale of property by administrators under order of court were proceedings in rem, and an integral part of a larger proceedings in rem, namely, the administration of the estate, and that a failure to strictly and literally follow the provisions of the statute respecting notice did not affect the jurisdiction of the court, nor render the title acquired void when attacked in a collateral proceedings.

The majority of this court by its decision says, in effect, that the lawyers of this state were not justified in proceeding on such an assumption. The answer to that contention is found in the decisions of the federal court in cases arising in this jurisdiction. That court, like Oklahoma attorneys, attaches controlling importance to the decisions of this court upon questions involving the state law. In the case of Magnolia Pet. Co. v. Mayer et al., 58 F. (2d) 48, the Circuit Court of the Tenth Circuit, speaking through Judge Cotteral, a renowned jurist of years of previous experience in the Oklahoma practice, in passing upon the validity of **an administration** sale concluded in Oklahoma, said:

"However, the fact of service was not necessary to the validity of the sale, and it is wholly immaterial whether George McGowan and Ollie Brown were parties to or mentioned in the proceedings. As ruled in Grignon's Lessee v. Astor, supra, 'on a proceeding to sell the real estate of an indebted intestate, there are no adversary parties, the proceeding is in rem, the administrator represents the land, * * * they are analogous to proceedings in the admiralty, where the only question of jurisdiction is the * * * power over the thing, the subject-matter before them, without regard to the persons who may have an interest in it; all the world are parties.' This doctrine was reaffirmed in Mohr v. Manierre, 101 U. S. 417, 25 L. Ed. 1052. It was also followed and adopted as the law of Oklahoma in Eaves v. Mullen, 25 Okla. 679, 107 P. 433, approved in many later decisions of the state court. And it was applied with full force and effect by this

court in Weston v. Poland, 48 F. (2d) 738, and Clark v. Anthis, 51 F. (2d) 42. Notice in the steps taken for the sale of the land in question was a procedural matter, and it did not affect the jurisdiction of the county court to direct and confirm the sale."

Certiorari was denied by the Supreme Court of the United States, Brown v. Magnolia Pet. Co., 289 U. S. 618, 77 L. Ed. 536. No better proof could be made as to the established law of Oklahoma as understood by the bench and bar of this state.

Judge Cotteral had before him in the Magnolia Case the identical question presented here. The administrator was appointed and filed petition to sell real estate. Some of the heirs were not notified and were not even named in the petition to sell the land, and they contend "There was a want of the jurisdictional notice to them in the sale proceedings, and the two heirs not named in the will asserted the sale was also invalid because they were not parties to the proceedings." In other words, in that case the heirs had no notice at all. The court, however, held the sale valid. The United States Circuit Court said this was a proceeding in rem; that the administrator operated upon the land under his supervision, and that the failure to give notice was not jurisdictional.

In repudiating the opinion in the Magnolia Petroleum Case, supra, and the application of the doctrine in the case of Eaves v. Mullen, the majority opinion herein says:

"We do not agree with the Circuit Court of appeals of the United States that under our probate law that the special proceeding by petition to sell real property upon notice and an order after a hearing to pay debts of an estate and expenses of administration is a proceeding in rem, and refuse to follow the rule upon that issue as declared by that court. **We have carefully considered our probate law and that of many other states and the opinions of said states construing similar laws and adhere to the views of those courts which hold the proceeding adversary, so far as the heirs are concerned, and notice to them jurisdictional.** It is a well established rule of law that the federal courts are bound to follow the decisions of the highest courts of the state upon questions relating to the construction of the state Constitution, of the validity thereunder of state statutes." (Emphasis mine.)

I believe it is inconsistent for this court to criticise an opinion of a federal court rendered on appeal when that court has

followed the previous decisions of this court. More particularly when the criticism breaks down the barrier of the doctrine of collateral attack.

The majority opinion herein, in syllabus 6, says:

"A general finding or recital in a judgment or order of a court of record, of due service of process, or notice, is limited by and restricted to the process or notice, if any there be, actually found in the record; and the validity of the judgment or order will depend on the sufficiency of such process or notice and service thereof."

For the purpose of comparison and illustrative of the conflict in principle between the case at bar and the rule heretofore recognized and followed by this court, we quote from Eaves v. Mullen, syllabus 6:

"A decree confirming a sale at public auction by the guardian of his ward's real estate, made upon a hearing of the return, brought on before the first day of the next term of the county court after such sale, is not rendered void on collateral attack because notice of such hearing was given only 9 days instead of 10 as directed by order of the court fixing the date of such hearing and as provided by sections 1852 and 1667, Wilson's Rev. & Ann. St. Okla. 1903."

The majority opinion adopts an alleged distinction between a guardianship's and administrator's sale. It is therein stated:

"The distinction between sales made by an administrator under a special proceeding in the administration proceedings to pay debts of the estate and the expenses of administration, and the proceedings by a guardian to sell his ward's land for the purpose of supporting and educating the minor or re-investing the funds in other property, is clearly pointed out in the case of Scarf v. Aldrich (Cal.) 32 P. 325, and Hunter v. Buchanan et al. (Neb.) 127 N. W. 166, and cases there considered."

"Some of the opinions from other states considered and discussed in this case disclose that under the laws of those states, provision is made for appointing a guardian ad litem for the minors. Under the statutes of some of the states it is mandatory. That issue is not involved in the case at bar and we are not passing upon it."

This alleged distinction is an innovation in our law. As the majority opinion reflects, it is borrowed from the decisions of other states. It is now injected into the law of this state for the first time to become a disturbing element in connection

574

with real estate titles heretofore regarded as stable by reason of the previous adherence of this court to the doctrine that no such distinction heretofore existed in this jurisdiction, the sales in both instances being recognized as proceedings in rem. This judicial child reared and nourished in other states is now being adopted in our own, supplanting, in our legal affections the natural offspring of the pioneers of judicial precedent in this jurisdiction.

With reference to stability of land titles in Oklahoma, the majority opinion says:

"Counsel for defendants contend that the stability of land titles is the paramount issue in cases of this nature. The question is, Whose land titles? Is it the land title of the helpless minors ? * * * Or is it the land title of the purchaser who buys the property at administration sale? * * *"

While there is no fraud, as in the instant case, this question has been answered in hundreds of decisions. The stability of land titles refers to the title of the purchaser in good faith for value who enters upon the property with a feeling of security relying upon previous decisions that his title will not be disturbed. As was said in White v. Cheatham, 101 Okla. 264, 225 P. 533, wherein this court said:

"Doubtless hundreds of titles, void if we reverse this rule, have been made in this state and sold to innocent purchasers with reliance upon this rule announced as a rule of property in Eaves v. Mullen."

In Dill v. Stephens, 141 Okla. 24, 284 P. 60, the Eaves v. Mullen rule was again announced as a long-standing rule of property. In Factor v. Perkins, 164 Okla. 20, 22 P. (2d) 391, in referring to the doctrine of stare decisis, this court said:

"As a portion of the doctrine of stare decisis, this court recognizes that stability of the law in connection with the real property and stability of the titles to lands in this state depend upon an adherence to the rules of property established by the decisions of this court, and when this court has announced in its previous decisions a doctrine which has for many years been the basis of determining the validity of titles. it is only in the most exceptional cases that the previous rule should be disturbed in any manner. Thousands of titles have been approved in this state on the strength of Tiger v. Drumright, supra, and upon the doctrine announced in the case of Eaves v. Mullen. To overrule these decisions at this time by judicial interpretation retroactive in effect would create inestimable injury and chaos and uncertainty in connection with the titles to real property. It

is, therefore, the opinion of this court that the decision of the trial court should be affirmed."

Where decisions of a court of last resort have been accepted and acted upon for a long time as the interpretation of the law, courts should be slow to interfere with the principle announced in former decisions even though it might decide otherwise were the question involved one of original interpretation. Justice Hayes, in Eaves v. Mullen, supra, cited Grignon's Lessee v. Astor, supra, from which case we quote, as follows:

"We do not deem it necessary, now or hereafter, to retrace the reasons or the authorities on which the decisions of this court in that, or the cases which preceded it, rested; they are founded on the oldest and most sacred principles of the common law. Time has consecrated them; the courts of the states have followed, and this court has never departed from them. They are rules of property, on which the repose of the country depends; titles acquired under the proceedings of courts of competent jurisdiction must be deemed inviolable in collateral action, or none can know what is his own; and there are no judicial sales around which greater sanctity ought to be placed, than those made of the estates of decedents, by order of those courts to whom the laws of the states confide full jurisdiction over the subjects."

In conclusion I reiterate that the recognized rule of law in Oklahoma in probate proceedings for the sale of real estate, including both guardian and administration sales, are proceedings in rem; that the rule as to notice of an application for an order to sell real estate by guardian or administrator is directory and not jurisdictional; that since this principle has been recognized by our courts, an improper notice does not render a title acquired through administrator's sale open to successful collateral attack; that Oklahoma is one of the jurisdictions in which this rule has been recognized for a quarter of a century, and that the same has become an established rule of property in this jurisdiction; that an application of this rule to the case at bar would confirm the title of Seals herein and recognize the same as an established and vested property right.

The majority opinion places considerable stress upon "due process of law," asserting that service of the notice upon the minors in literal compliance with the statute was required thereby. If the major premise of the majority opinion is accepted as correct and the proceedings to sell real estate be

recognized as a proceedings separate and distinct from the general course of administration, "due process of law" is a proper subject of consideration in connection with the requirement of notice. This for the reason that the notice required by due process of law has reference to the original notice by which the court acquires jurisdiction. It has no application, however, to proceedings had in the exercise of a jurisdiction already acquired. Thus, in this case, if we should follow the previous rule recognized in this jurisdiction and hold in this case that the proceedings to sell real estate are merely an integral part of a larger proceeding in rem (the administration of the estate), it would follow that the notice of hearing on application to sell real estate would be merely one step in the exercise of jurisdiction already acquired. Under the theory, "due process of law" would have no application to the notice herein involved and would be eliminated as an important or deciding factor. I deem it unnecessary to further discuss that phase of the case. And while I have not discussed the question of the equitable principles involved herein, I deem it proper to observe that the property recovered by the minors in this case was heavily encumbered by mortgage at the time of the probate sale and the minors under any circumstances could have inherited only an equity of questionable value. It is not even argued that the estate did not receive the full value of the property at the administration sale; nor is it urged that it was possible to pay the debts of the decedent without a sale of the property; nor was any actual fraud perpetrated in procuring or conducting the sale.

It is only in the most extreme cases that this court should render a decision which is inequitable, and such decisions should be limited to cases where it is essential to uphold an established and fundamental rule or principle of law. I do not feel that such a decision is warranted in this case, where, in order to arrive at a result I believe to be inequitable, we break down an established rule of property upon which not only rests the title of Seals, but the title of many others in this jurisdiction. Furthermore, I believe that the majority opinion in this case will cast a cloud on thousands of titles in this state and result in a flood of uncalled for litigation. The re-

marks of Van Fleet made 40 years ago are as potent today as they were when written. He said, in his work on Collateral Attack, page 3:

"It is the duty of the courts to set their faces against all collateral assaults on judicial proceedings for two reasons, namely: First. Not one case in a hundred has any merits in it. The reader of this work will see that innocent purchasers, by means of collateral assaults on their titles derived through judicial proceedings, have been compelled to yield millions to dishonest debtors on account of bald technicalities that caused no actual harm whatever, and that, by the same means, criminals who have been fairly tried and justly convicted and sentenced, have caused untold vexation and expense to innocent prosecutors and officers. An old case said: 'Judges will invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury which by rigid rules might be wrought out of the act.' When the court can plainly see that a dishonest debtor or criminal is attempting to use it as a tool to wrest property from innocent purchasers, or to punish honest people, the judge ought to be astute in inventing reasons to thwart him. Second. The second reason why the courts should reduce the chances for a successful collateral attack to the lowest minimum is, that they bring the courts themselves into disrepute. Many people look upon the courts as places where jugglery and smartness are substituted for justice, and nothing tends more to increase their numbers than to see their property and rights, held under the solemn adjudications of the courts, snatched away on account of some defect or omission in a summons, or return of service, or petition, which caused no actual harm to any one. Such things tend to weaken law and order and to cause men to settle their rights by violence. For these reasons, when the judgment rendered did not exceed the possible power of the court, and the notice was sufficient to put the defendant upon inquiry, a court should hesitate long before holding the proceeding void collaterally. * * *

"Where a court has erroneously held that certain things were sufficient to give jurisdiction, and titles have been built thereon, the doctrine of stare decisis forbids the overruling of those decisions."

For the reasons herein stated, I respectfully dissent.

I am authorized to say that Justice BAYLESS concurs in this dissent.